## Nichols et al. v. Henry.

Nov. 27, 1945.

436

Samuel H. Cole and I. J. Miller for appellant.

A. M. Hall for appellee.

Lafon Allen, John B. Rodes, Leo T. Wolford, Robert T. Burke, James B. Milliken and William A. Minihan amici curiae.

OPINION OF THE COURT BY JUDGE HARRIS—Reversing and remanding.

This is a declaratory judgment proceeding by the appellee, a resident taxpayer of Fayette County, against the Fiscal Court of Fayette County to test the constitutionality of Chapter 156 of the 1944 Acts of the General Assembly, now carried as KRS 158.115.

With its title and preamble included, the Act reads:

"An Act to promote the public welfare, comfort, health and safety by providing supplemental transportation along highways, which have no sidewalks, for children attending school in compliance with the compulsory school attendance laws.

"Whereas, the safety of all children is greatly endangered by their walking along highways without sidewalks to and from school and their health is greatly endangered in inclement weather;

"Whereas, such bus transportation is now furnished

to children attending the common schools and can be furnished with little or no additional cost to children attending schools other than common schools under the compulsory school attendance laws of the Commonwealth of Kentucky and traveling the same routes:

"Whereas, the cost of present bus transportation to the common schools is paid out of school funds, but the cost of transportation to other schools approved under the compulsory school attendance laws, can legally be paid from general funds only,

"Now, in order to facilitate their compulsory attendance at some school and to give aid and protection to children on the highways.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Each county may furnish transportation from its general funds, and not out of any funds or taxes raised or levied for educational purposes or appropriated in aid of the common schools, to supplement the present school bus transportation system for the aid and benefit of all pupils of elementary grade attending school in compliance with the compulsory school attendance laws of the Commonwealth of Kentucky who do not reside within reasonable walking distance of the school they attend and where there are no sidewalks along the highway they are compelled to travel; and any county may provide transportation from its general funds to supplement the present school bus transportation system for the aid of any pupil of any grade who does not live within reasonable walking distance of the school attended by him in compliance with the compulsory school attendance laws and where there are no sidewalks along the highway he is compelled to travel."

The petition alleged: (1) The Act is unconstitutional and void, in that it violates the provisions of sections 3, 5, 26, 171 and 180 of the Constitution. (2) The Act purports to authorize the use of county funds to furnish transportation to those pupils only who attend public school in compliance with the compulsory school attendance law—KRS 159.010 and 159.030; whereas pupils who attend private, sectarian and parochial schools do so by voluntary choice, by reason of which they are specifically exempted by KRS 159.030 from the compul-

sory provisions of KRS 159.010. (3) If the court should hold the Act to be constitutional, then transportation could be furnished only to county pupils who do not live within reasonable walking distance of the school they attend, and then only to the point where sidewalks are located at or beyond the corporate limits of the city of Lexington.

The appellee admitted, by answer, that an actual controversy existed and requested this court to make a binding declaration of rights between them and the appellant upon the three questions presented by the petition. They further requested the court to determine whether they could use the general fund then on hand to furnish transportation to pupils attending private, sectarian and parochial schools and, if so, whether on exhaustion of that fund they could levy a special tax for such transportation purposes.

The case having been submitted on the pleadings and the briefs of counsel, the chancellor adjudged: (1) The Act is in contravention of sections 3, 5, 26, 171 and 180 of the Constitution. (2) Those pupils who attend the private, sectarian and parochial schools of Fayette County do so in compliance with the compulsory school law, and not by voluntary choice. (3) The Act having been adjudged to be unconstitutional, the question whether transportation may be furnished only to pupils not living within reasonable walking distance of their school, and then only to the point where sidewalks are available, is moot. (4) No part of the general funds, nor any other funds of Fayette County, may be used to transport such pupils; nor may a special tax be levied for that purpose.

Section 5 reads: "No preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity; nor shall any person be compelled to attend any place of worship, to contribute to the erection or maintenance of any such place, or to the salary or support of any minister of religion; nor shall any man be compelled to send his child to any school to which he may be conscientiously opposed; and the civil rights, privileges or capacities of no person shall be taken away, or in any wise diminished or enlarged, on account of his belief or disbelief of any re-

ligious tenet, dogma or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience.''

The Act does not encroach upon nor undertake to circumvent any of the inhibitions enumerated in this section. It constitutes simply what it purports to be— an exercise of police power for the protection of childhood against the inclemency of the weather and from the hazards of present-day highway traffic. The circumstance, argued by the appellee, that in Catholic schools the Catholic faith is taught and in Protestant schools the Protestant faith is taught, does not change the purpose or effect of the Act nor convert it into one which gives preference to a religious sect or society, or to any particular creed, mode of worship or system of ecclesiastical polity; neither does it undertake to compel any person to attend any place of worship or to contribute to the erection or maintenance of any such place, or to the salary or support of any minister of religion.

Section 26 simply provides that everything contained in the Bill of Rights is excepted out of the general powers of government and that all laws contrary to the Bill of Rights, or contrary to the Constitution, shall be void. The converse is, of course, that if a legislative enactment does not violate some other section, it is not unconstitutional by reason of anything contained in this section.

Section 180, so far as alleged by the appellee to be applicable, reads: ''* * * Every act enacted by the General Assembly, and every ordinance and resolution passed by any county, city, town or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.''

In support of her contention that this section is violated by the Act, it is argued by the appellee that at no time has any tax ever been levied or collected by Fayette County for the purpose of furnishing transportation to pupils attending the private, sectarian and parochial schools of the county, and that the use of the county's general funds for such purposes would constitute an unwarranted diversion of those funds to

purposes other than those for which the tax was levied and collected.

We cannot accept that argument. KRS 68.210 et seq. provides for the levy of a tax for general fund purposes, as well as for the transfer of money from one fund to another. When, therefore, the Fiscal Court accepts the proposed budget and levies a tax for general fund purposes in accordance with the budget, the requirement of section 180 that the "resolution passed by any county * * * levying a tax, shall specify distinctly the purpose for which said tax is levied," is satisfied. Not only that: as soundly stated by the chancellor, on the authority of Overall v. City of Madisonville, 125 Ky. 684, 102 S. W. 278, 12 L. R. A., N. S., 433, when the purpose for which a tax was levied has been accomplished, the surplus may be transferred to the general fund and be used for any purpose for which a tax might have been levied. Since all this is so, and since the Act under attack specifically provides that the county may provide the cost of such transportation from its general funds, it is our view that the provisions of this section of the Constitution are not violated.

With respect to the question of whether on exhaustion of the general funds the county may levy a special tax for such transportation purposes, we think the implication of what we have said above constitutes a sufficient answer; i. e., the general fund unit of the budget should be made sufficient to cover this item of contemplated expenditure.

Sections 3 and 171 are the only sections of the Constitution whose provisions might appear to be violated. Their pertinent provisions read:

Section 3. "* * * no grant of exclusive, separate, public emoluments or privileges shall be made to any man or set of men, except in consideration of public services; * * *."

Section 171. "* * * Taxes shall be levied and collected for public purposes only * * *."

The specific distinction between the quoted provisions of these two sections is, that those of section 3 forbid a special privilege, while those of section 171 require a public purpose. In principle, however, their provisions are so akin that, generally speaking, an Act

which constitutes a violation of the spirit of the one likewise constitutes a violation of the spirit of the other; and conversely, that which does not constitute a violation of the spirit of the one does not constitute a violation of the spirit of the other. In fine, the inhibitions enumerated relate to private purposes as contradistinguished from public purposes; and, therefore, the Act not being in violation of either of the other sections, the whole controversy under these two sections narrows to the simple question of whether the purpose to be accomplished by the Act is a public one.

To borrow a thought from the well-considered opinion in Dodge v. Jefferson County Board of Education, 298 Ky. 1, 181 S. W. 2d 406, as civilization and enlightenment have advanced, the conceptions of the lawmakers, of the courts, and of the whole body of the public with respect to what constitutes a public obligation, or a public purpose, have greatly changed. And as stated in Bowman v. Frost, Commissioner of Welfare, 289 Ky. 826, 158 S. W. 2d 945, 948, which tested the constitutionality of an Act to promote the public welfare by providing aid to the needy blind:

"* * * Section 3 of the Constitution applies to cases where no duty rests upon the state to reward the recipient, but not to cases where payments are made in discharge of an inherent duty. The aid provided for in the act before us is not a mere gift or bounty, but is a payment by the state in discharge of a duty to a recipient who is entitled to it as of right, having established his eligibility under the act. It is true his legal right results solely from statute, since there was no common-law obligation on the state to care for the poor, but when the state undertakes by statute to assume the obligation his right attaches. In 21 R. C. L. 701, it is said: 'The care of the state for its dependent classes is considered by all enlightened people as a measure of its civilization, and the care of the poor is generally recognized as among the unquestioned objects of public duty, but in spite of this, the duty under the common law was purely moral and not legal. There is therefore no legal obligation at common law on any of the instrumentalities of government to furnish relief to paupers. The obligation to support such persons results only from statute. The reason for this seeming

442

barbarity of the common law was that matters of charity. were thought more appropriate for the church.'

"Relief by the state of the needy and afflicted who are unable to care for themselves is an accepted exercise of valid. authority under the police power in promotion of the general welfare, and when the Legislature provides for the performance of this governmental function constitutional provisions should be construed, if possible, so as not to interfere with its proper exercise. * * *;'.

In Meredith, Attorney General, et al. v. Ray, 292 Ky. 326, 166 S. W. 2d 437, the court had before it the question of the constitutionality of Chapter 158 of the 1940 Acts of the General Assembly, entitled an act to promote the public welfare by providing aid to dependent children. Section 1 of the Act defines a "dependent child" to be "a needy child under the age of sixteen (16), or under the age of eighteen (18) if found by the State Department to be regularly attending school, who has been deprived of parental support or care by reason of the death, continued absence from home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, or aunt in a place of residence maintained by one or more of such relatives as his or their home." The plaintiff in the case was a 14 year old infant who resided with her mother and whose father had been adjudged to be of unsound mind. In deciding that the Act did not violate section 3 of the Constitution we quoted with approval from Bowman v. Frost, supra, and reaffirmed the long and well-established rule that a classification based on reasonable and natural distinctions will not be voided. In the course of the opinion we also quoted with approval the statement which was made in Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. 2d 967, viz.: "The fact that a statute discriminates in favor of certain classes does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, or if any state of facts reasonably can be conceived to sustain it." [292 Ky. 326, 166 S. W. 2d 438.]

Under that statute, and under the court's ruling, it will be noted that the aid to be granted is not limited to children who attend the common schools, but is avail-

able as well and equally to those who attend private, sectarian or parochial schools.

"It is often difficult to draw the line which bounds constitutional taxation, or to determine whether the purpose is one in aid of which the taxing power may be invoked, or the money thus raised expended. If it be doubtful, and the Legislature has seen fit to exercise the power, the judiciary should not interfere. The doubt is then to be solved in favor of the legislative action." Norman v. Kentucky Board of Managers, 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556. Or, as expressed in Cooley on Taxation, Vol. 1, page 182: "It is also argued that the determination of what is and what is not a public purpose belongs in the first instance to the legislative department. It belongs there because the taxing power is a branch of the legislative, and the Legislature cannot lie under the necessity of requiring the opinion or the consent of another department of the government before it will be at liberty to exercise one of its acknowledged powers. * * * It is not lightly to be assumed that its members have come to the examination of the subject with any other than public motives, or that they have failed to give it due investigation. The presumption, on the other hand, must always be that they have considered it with honesty and fair purpose, and that their action is the result of their deliberate judgment. And with those presumptions it would seem but reasonable and proper that the courts should support it, when not clearly satisfied that an error has been committed."

In this advanced and enlightened age, with all of the progress that has been made in the field of humane and social legislation, and with the hazards and dangers of the highway increased a thousandfold from what they formerly were, and with our compulsory school attendance laws applying to all children and being rigidly enforced, as they are, it cannot be said with any reason or consistency that tax legislation to provide our school children with safe transportation is not tax legislation for a public purpose. Neither can it be said that such legislation, or such taxation, is an aid of a church, or of a private, sectarian, or parochial school, nor that it is other than what it is designed and purports to be, as we have stated hereinabove—legislation for the health and safety of our children, the future citizens of our state. The fact that in a strained and technical

sense the school might derive an indirect benefit from the enactment, is not sufficient to defeat the declared purpose and the practical and wholesome effect of the law.

We shall not further extend this opinion by going into a detailed consideration of the various sections of the statutes which provide for compulsory attendance. It is sufficient to say that KRS 159.030, relied upon by the appellee, does not have the effect of exempting from compulsory attendance those pupils who are enrolled in private, sectarian, and parochial schools. It merely exempts them from attending the common schools.

In the case of Sherrard v. Jefferson County Board of Education, 294 Ky. 469, 171 S. W. 2d 963, which is relied upon by the appellee, we held that public school funds could not be used for the transportation of children attending private schools. We reaffirm that ruling, but it is obvious from what we have said in upholding the Act presently under attack that this case deals with an entirely different question. Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673, is so distinguishable in fact and principle as to have no application here. See Carman v. Hickman County, 185 Ky. 630, 215 S. W. 408.

With respect to the remaining question, it is our view that transportation may be furnished in the first instance only to those who do not live within reasonable walking distance of the school, and where there are no sidewalks available at or within a reasonable distance of their homes, but having once boarded the bus they will not be required to leave it until they have been transported to within a reasonable distance of their school.

In conclusion, it is our view that the Act in question does not violate the Constitution and the case is now remanded for the entry of a judgment and a declaration of rights consistent herewith.

Judge Dawson, not sitting.