**SMITH v. WILSON et al.**

Court of Appeals of Kentucky.

June 23, 1954.

Dissenting Opinion June 25, 1954.

W. J. Goodwin and D. L. Frederick, Louisville, for appellant.

James A. Crumlin, Louisville, and Frank G. Gilliam, Lexington, for appellees.

STANLEY, Commissioner.

The petition of Richard Wilson and Edith, his wife, prayed for (1) a judgment terminating the parental rights of the mother of William Harrod Dailey, and (2) an order of adoption with the change in the surname of the child to Wilson. The mother, the child and the State Department of Economic Security, Child Welfare Division, were named as defendants. The court rendered the two-fold judgment prayed. The mother, now Martha Smith, who was the active defendant, appeals.

I.

KRS 199.600(1) confers authority upon a circuit court in a proper action to "terminate all parental rights of the parents" or of the mother of an illegitimate "neglected or abandoned child" upon certain conditions being proved, and to "declare the child to be a ward of the state, and may vest the care, custody and control of the child in the department (now Kentucky Children's Bureau, Chapter 83, Acts of 1952), or in any licensed child-caring or child-placing agency or institution". Such judgment terminates all legal relationships "the same as if the relationship of parent and child had never existed," except the child's right of inheritance. KRS 199.-630(2). Subsection (5) of KRS 199.600 reads:

"Proceedings under this section may be instituted upon petition by the department, any probation officer, any state or local law enforcement officer, any county or commonwealth's attorney or a natural parent."

The mother's challenge of the right of the plaintiffs to maintain the action was overruled. This was doubtless based upon the conclusion that the phrase "may be instituted" by the public officials is permissive but not exclusive. Ordinarily, "may" is regarded as a word conferring permission or discretion to act. But the word is frequently construed to be the equivalent of "shall" or "must" by the consideration of the general provisions and scope of the statute in which it is used. It is especially so where the act authorized to be done concerns the public interest or the performance or non-performance of a duty of a public officer which affects the rights of others. Its particular meaning must be determined upon the apparent intent of the statute as gathered from the context, regard being had to the evil intended to be remedied and the object sought to be accomplished. Ocean Accident & Guarantee Corp. v. Milford Bank, 236 Ky. 457, 33 S.W.2d 312; City of Middlesboro v. Terrell, 259 Ky. 47, 81 S.W.2d 865.

When the extreme character of the present action is considered—interference with or severance of the natural rights of a parent and making the child the ward of the State—we think that in providing that the action "may be instituted" the legislative intent was to vest exclusive discretionary power in the designated public officers. This is a matter of public and not private concern. Therefore, we are of opinion the court should have sustained the plea of absence of authority in the plaintiffs to maintain this part of the two-fold action.

## II.

The petition for adoption of the child is in a different category although the right to maintain the proceeding is in part based upon the sections of the statute captioned, "Involuntary termination of parental rights." The adoption division of Chapter 199, KRS, which deals with dependent, neglected and delinquent children, etc. as revised by Chapter 125, Acts of 1950, provides that any adult person or husband and wife possessing certain qualifications may petition the circuit court for leave to adopt any child under stated conditions. KRS 199.-470. It is provided in KRS 199.500 that no adoption shall be granted without the consent of the mother of a child born out of wedlock except, inter alia, that such consent shall not be required, subsection (1) (b), if "The parental rights of such parents have been terminated under KRS 199.600 to 199.-630." But subsection (4) provides:

"Notwithstanding the provisions of subsection (1) of this section, an adoption may be granted without the consent of the natural living parents of a child if it is pleaded and proved as a part of the adoption proceedings that any of the provisions of subsections (1) or (2) of KRS 199.600 exist with respect to such child."

We emphasize that the condition is not, as in subsection (1) (b), that parental rights have been in fact terminated. It is upon pleading and proof "that any of the provisions" of the sections cited "exist with respect to such child." The adoption proceedings thus by reference merely use provisions which would authorize the termination of the parental rights without consent. The primary condition, KRS 199.600(1), is that the child shall be a "neglected or abandoned child as defined in KRS 199.011." That section, which was part of the same Act (1950), contained these definitions:

"(5) 'Neglected or dependent child' means any child who is under such improper parental care and control or guardianship as to injure or endanger the morals, health or welfare of himself or others;

"(6) 'Abandoned child' means any child who by reason of the desertion of his parents or guardian is in destitute circumstances; * * *."

However, these definitions were omitted in amending and re-adopting KRS 199.011 by an Act of 1952, Ch. 83, Sec. 6, but the reference thereto remained in KRS 199.600. The other changes were in nomenclature and made to accord with the establishment of the Division of Child Welfare in the Kentucky Children's Bureau, and to transfer to it all child welfare functions, and, as well, to co-ordinate the Youth Authority Act, Ch. 161, Acts of 1952, now Ch. 208, KRS, which deals comprehensively with neglected and delinquent children.

The failure to adjust the reference to KRS 199.011 or to re-incorporate the definitions was probably an inadvertence although the Legislature may have deemed the incorporation of the definition by reference as unnecessary to the expression of its will, which is so manifest throughout. Even were the legislative intent less clear, the courts have power to construe the statute so as to make it express the intent and the policy or purpose of the Act. Goodpaster v. United States Mortgage Bond Co., 174 Ky. 284, 192 S.W. 35; Folks v. Barren County, 313 Ky. 515, 232 S.W.2d 1010. So much more should this rule apply when the reference is only to a legislative definition. Cf. Miller v. Kirksey, 265 Ky. 106, 95 S.W. 2d 1059; Robertson v. Western Baptist Hospital, Ky., 267 S.W.2d 395.

In any event, the repealed definitions of an abandoned child and a neglected child are but the commonly understood meaning and approved usage of those terms in all judicial proceedings. The definitions certainly describe the condition of the child involved in this case insofar as it concerns the attitude and relationship of his mother.

The child was the second illegitimate born to Martha, a colored girl. When he was seven weeks old, she placed him with her friend, Edith, and he stayed with her for about seven months. When he was 14 months old, Martha called Edith about four o'clock one morning from the jail and asked her to go get the child. She did so and has had him ever since. He is now about 9 years old. Meanwhile, when Martha was about to have another baby, she married James Johnson, its father. He divorced her on the ground of adultery. As her fourth illegitimate child was about to be born, and after this suit had been filed, she married her present husband. During all these years this girl has lived a life of drunkenness and debauchery and has left the entire care and maintenance of this child to her friend, Edith. She paid practically no attention whatever to her child. When a social worker from the office of Aid to Dependent Children visited Martha's home and learned that she was receiving financial assistance for this child, the aid was stopped. Thereupon, Martha sought to obtain his possession by habeas corpus proceeding, but it was denied. That effort precipitated the present action.

On the other hand, Edith and her husband are proved to be of excellent character and to have given this child a real Christian home and loving care. The husband is employed as a janitor at the First National Bank and the wife as a domestic in a home. He owns his home in a good neighborhood. The representative of the Child Welfare Bureau filed a detailed report which is highly complimentary of these parties and very derogatory of the appellant. The social worker recommended that adoption be granted. A private examination of the little boy by the judge manifested his desire to stay with Edith, whom he called mother, rather than with Martha, whom he referred to as Aunt Martha.

The welfare of a child such as this is the manifest objective of the statute under which the proceeding has been maintained. That objective is attained by the judgment of adoption.

### III.

The case was primarily and purposefully instituted to adopt the child, KRS 199.470, although it was coupled with a proceeding for the involuntary termination of parental rights. KRS 199.600. As we have held above, this latter proceeding could not be maintained by the private individuals. But the judgment of adoption in this particular case substantially accomplishes the same end, for KRS 199.530 declares, inter alia, that an adopted child "shall be considered, for purposes of inheritance and succession and for all other legal considerations, the natural, legitimate child of the parents adopting it" and the child is freed from all legal obligations of maintenance and obedience to its natural parents. KRS 199.-530(2).

The entire judgment, therefore, should be and it is affirmed.

STEWART, J., dissenting.

STEWART, Justice (dissenting).

KRS 199.600(5) specifies the persons who may institute an action to terminate parental rights under KRS 199.600(1), and the majority opinion correctly holds that plaintiffs are excluded from those named in the first-mentioned subsection and therefore could not maintain the action in this respect. The inevitable result is that the parental rights of the mother, defendant below, were not and have not been severed as to the child. However, the opinion proceeds to hold that plaintiffs may nevertheless adopt the child and this can only mean that the adoption is approved by this Court with the natural parent still retaining all of the

rights of parenthood in and to the child. Such a result is repugnant to the plain requirements of KRS 199.600, which control the procedure in this case, and, more than that, the letter and spirit of the statutory provisions controlling adoptions under the Division of Child Welfare of the Kentucky Children's Bureau have been summarily brushed aside. See KRS 199.470 to 199.-630, inclusive.

For the reasons given I dissent.