FISCAL COURT OF JEFFERSON
COUNTY, Kentucky,
Appellant,

v.

Sara BRADY; Nancy Demartha; Gail Devine; Sandy Hoover; June Lee; Stephen Neal; Joyce D. Redd; Nancy Simpson; Jack Swann; Ann Walls and Bettie Weyler, Appellees.

No. 93–SC–723–TG.

Supreme Court of Kentucky.

Sept. 1, 1994.

Rehearing Denied Nov. 23, 1994.

Stuart L. Adams, Jr., Paul B. Whitty, Louisville, for appellant.

John Frith Stewart, Dennis F. Janes, Louisville, for appellees.

John J. Ford, Ford, Klapheke & Meyer, Louisville, for amicus, Roman Catholic Archdiocese.

Edward L. Schoenbaechler, Goldberg & Simpson, PSC, Louisville, for amicus, Kentucky League for Educational Alternatives.

LEIBSON, Justice.

Appellees are taxpayers and residents of Jefferson County, Kentucky, who challenge grants now being made by the Fiscal Court from county tax revenues by direct payment to certain specified privately-owned schools.

These payments are designated as school transportation subsidies. The private schools that received a transportation subsidy from Fiscal Court in the 1992–93 fiscal year are specified in the appropriation as follows:

| RECIPIENT OF SUBSIDY | BUDGETED COST | SUBSIDY RECEIVED |
| --- | --- | --- |
| Christian Academy | $13,650 | $4,372 |
| DePaul School | $33,300 | $4,900 |
| Kyana Special School | $12,000 | $1,974 |
| Office of Catholic Schools | $1,057,000 | $455,642 |
| Portland Christian School | $6,000 | $1,368 |
| TOTALS | $1,121,950 | $468,256 |

Appellees claim these payments (1) exceed the statutory authority of Fiscal Court as specified in KRS 158.115 and 67.080 and (2) violate the Kentucky Constitution, Sections 3, 5, 171, 184, 186 and 189. The final judgment of the Jefferson Circuit Court found both statutory and constitutional violations have occurred, and ordered that "Fiscal Court must immediately cease providing direct aid to nonpublic schools." Fiscal Court appealed, and because this is a matter of general public importance requiring prompt final resolution, we granted Fiscal Court's motion to transfer the appeal to our Court. For reasons to be stated, we affirm the trial court.

In *Sherrard v. Jefferson County Board of Education,* 294 Ky. 469, 171 S.W.2d 963 (1942), our Court held the Jefferson County Board of Education could *not* provide private school pupils the same transportation rights as public school pupils without violating the prohibitions in the Kentucky Constitution (1) against using tax money "raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters," Sec. 184, and (2) against taxes being "levied and collected" for other than "public purposes," Sec. 171.

Thereafter the General Assembly enacted KRS 158.115 to permit counties, if they choose to do so, to establish an alternative source of funds for transportation for "all

pupils," public and nonpublic alike. KRS 158.115(1) provides "[e]ach county may furnish transportation from its general funds ... to supplement the present school bus transportation system for the aid and benefit of all pupils of elementary grade [and 'any pupil of any grade'] attending school in compliance with the compulsory school attendance laws of the Commonwealth of Kentucky who do not reside within reasonable walking distance of the school they attend and where there are no sidewalks along the highway they are compelled to travel."

KRS 158.115(2) then provides:

"Each county may provide transportation by means of local board of education operated transportation systems, transit authorities organized and operating pursuant to KRS Chapter 96A, local governmental mass transit systems, and individual contracted buses and vehicles."[1]

KRS 158.115 was upheld as constitutional in *Nichols v. Henry,* 301 Ky. 434, 191 S.W.2d 930 (1946), as "an exercise of police power for the protection of childhood against the inclemency of the weather and from the hazards of present-day highway traffic." *Id.,* 191 S.W.2d at 932. *Rawlings v. Butler,* Ky., 290 S.W.2d 801 (1956), upheld a Nelson County Fiscal Court payment to the County

1. The present method of direct payment by grants to private schools and school systems does not conform to any of the methods specified in

subsection (2), which raises issues which we will discuss later in this opinion.

School Board of a supplement sufficient to cover the "per capita" cost of transporting parochial school children on the same buses used by the school board in its school board transportation system for public school children, as within the holding in *Nichols v. Henry, supra.* The question in the present case is whether the *means* now being used by the Jefferson Fiscal Court to make payments to private and parochial schools falls within the statutory and constitutional parameters established by *Nichols* and *Rawlings.* The trial court has held it does not.

Jefferson County Fiscal Court began allocating monies from general funds in 1959 to defray transportation costs in nonpublic schools. Originally this subsidy was paid directly to the Board of Education of Jefferson County under an agreement whereby nonpublic school pupils were transported on buses owned and maintained by the Board of Education. In the mid–1970's the advent of public school desegregation made it no longer practicable for the school board to provide such transportation to nonpublic school pupils. Fiscal Court then began paying transportation subsidies directly to nonpublic schools which provided students with a means of transportation.

Then in 1983 the Board of Education eliminated transportation for public school pupils enrolled in certain "optional instructional programs" outside the pupils' regular and/or desegregation school attendance district. The Jefferson County Parents and Teachers Association (JCPTA) asked Fiscal Court to assume this burden and Fiscal Court responded by assuming the burden for these optional instructional programs along with its nonpublic school transportation subsidy. Commencing in 1987, cutbacks in funds available to the County from federal revenue sharing reduced the County's budget by 10.4%, and the County in turn cut the transportation subsidy by the same amount. The County considered entirely eliminating the transportation subsidy, and then instead, over time, (1) *eliminated* the public school subsidy for optional instructional programs and (2) *limited* the subsidies for nonpublic school transportation to schools where the average tuition charged each pupil did not exceed $3,000 per year. Beginning in fiscal year 1992/93 Fiscal Court no longer allocated any funds for the transportation of school students in public programs, and this lawsuit followed.

Fiscal Court maintains that public school pupils receive "adequate" transportation through the tax resources of the local Board of Education; that the controlling statute, KRS 158.115, should be interpreted to permit Fiscal Court discretion to allocate funds solely to nonpublic schools as the best use of "scarce county tax revenues" available for school transportation purposes. The appellees argue the critical language in KRS 158.115 authorizes county fiscal courts "to supplement the present school bus transportation system for the aid and benefit of *all* pupils," or as elsewhere stated, "for the aid of *any* pupil of any grade who does not live within reasonable walking distance," etc. (Emphasis added). Here the supplement is intended to benefit only selected pupils. In *Rawlings v. Butler, supra,* the Nelson County Board of Education's public school transportation budget was supplemented with an amount sufficient to cover the additional cost of transporting parochial school pupils "to protect *all* children from the hazards of the highway who under our compulsory attendance law were forced to attend school." *Id.* at 807.

The trial court believed the present case differs fundamentally from *Nichols* and *Rawlings* because of the "means" used to supplement the transportation expense in this case. The trial court held that, when Fiscal Court makes payment directly to the account of the nonpublic school, "since Fiscal Court loses all control of the funds allocated … it [the expenditure] must be characterized as direct aid" to private schools rather than simply paying the transportation expense of the children involved.

There are at least five problems with the way these subsidies are presently being made:

1) The money is paid over directly into the general funds of the private or parochial schools receiving payment. Only selected nonpublic schools enjoy the benefit of Fiscal Court's appropriation. The bulk of it ($455,-

642 of $468,256) is to be paid to the "Office of Catholic Schools." The trial court stated that "since Fiscal Court loses all control of the funds allocated to the nonpublic schools, it must be characterized as direct aid" to the recipient institution. After payment, the manner in which the money is expended is controlled solely by the recipient school. Presumably Fiscal Court, if it chooses to do so, could investigate how the money is actually spent, with a view towards deciding next year's allocation. But the trial court noted that if Fiscal Court were "to examine yearly the expenditures of the nonpublic schools on their transportation program ... [such oversight] could, quite easily, lead to excessive entanglement" with the religious institutions involved.

2) No money is now being expended on public school children for the optional instructional programs. Fiscal Court believes public school transportation needs are "adequately" provided for by the Jefferson County Board of Education through the funds raised to append public education. But appellees argue the public schools have an equal or greater need for transportation supplements than the private schools who are benefited, that public schools and public school transportation is not presently sufficiently funded by the school board to fully provide for the needs of public school pupils, and that if a county fiscal court elects to use KRS 158.115, it must do so in a way that provides a transportation benefit to "all pupils" rather than selected pupils.

3) The method for allocating money to the private schools depends upon application for a grant in which the applicant establishes (1) that the school involved provides its own means of transportation and (2) that the tuition charge is $3,000 or less. Thus (1) the recipient school actually controls the right to receive the allocation by deciding on the tuition it charges, and (2) there is no necessary correlation with either the financial resources actually available to the pupil who pays tuition or with the pupil's ability to provide for his or her own private transportation.

4) If transportation is considered to be solely a public health and safety measure for the protection of the school child rather than a supplement to the budget of the institution, the present system provides or withholds protection for nonpublic school children depending on which school they elect to attend. The appellees argue that no nonpublic school child's transportation should be subsidized because, viewed solely as a public health and safety measure, all school children may obtain subsidized transportation within the public school system simply by attending public school.

5) The present payment method contravenes subsection (2) of KRS 158.115 because none of the means for supplementing school bus transportation specified in subsection (2) are utilized.

While we respect the reasons behind the decision of the Jefferson County Fiscal Court to selectively fund the budget of certain specified nonpublic schools to assist them in the payment of their transportation expense, we agree with the trial court that the funding here is fundamentally different from *Nichols v. Henry,* and *Rawlings v. Butler, supra.* These cases involved payment to the local board of education, a public institution, supplementing the local board's transportation system so that the transportation needs of students attending sectarian schools would be addressed within the concept of protecting "all" students "against the inclemency of the weather and from the hazards of present-day highway traffic." *Nichols v. Henry,* as quoted *supra.* Here the private schools combine their own independently generated funds with Fiscal Court's subsidies, and then control how the money will be spent on transportation. In *Fannin v. Williams,* Ky., 655 S.W.2d 480 (1983), the state was providing textbooks for use in nonpublic schools. We concluded, "reluctantly, that regardless of its salutary purpose" the method used to assist nonpublic schools violated § 171 of the Kentucky Constitution which specifies that "taxes shall be levied and collected for public purposes only." The payments being made here to nonpublic schools falls under the same constitutional prohibition. By the same token it violates KRS 67.080(1) which provides that county funds may be appropriated, but only "for lawful purposes."

In *Fannin v. Williams*, we noted the difference between the fact situation presented and the situation presented in *Board of Education v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), where the U.S. Supreme Court held the book distribution scheme employed did not violate the "establishment of religion clause in the First Amendment":

> "The book distribution scheme there [*Board of Education v. Allen*] was based on requests for text books filed by individual·students while the distribution scheme here is based on a request by the chief administrator of each eligible school." *Fannin v. Williams*, 655 S.W.2d at 483.

Here, also, we note that financial aid is provided to the school rather than a transportation service to the child. There is a fundamental difference between providing school transportation to nonpublic school children along with public school children through Fiscal Court appropriation to the board of education, and providing direct payment to selected eligible schools.

The appellant has argued that *Fannin v. Williams* recognizes that public transportation may be provided to nonpublic school children, and so it does, but not by payment of public funds to supplement the budget of private institutions.

"The essence of the child benefit argument is that the aid provided flows directly and exclusively to the child and only indirectly, if at all, to the parochial school." *Fannin*, 655 S.W.2d at 483. This is not the essence of the present direct payment scheme. When the payment is made directly to the nonpublic school, § 184 of the Kentucky Constitution, which provides that public money cannot be expended for education other than in common schools without a vote of the people, is violated, because public money is being expended for the benefit of the private institution rather than providing specifically for the health and safety of all children.

Moreover, the statute in question, KRS 158.115, contemplates transportation furnished by Fiscal Court to "all pupils" equally. It does not contemplate furnishing transportation selectively to some pupils and not others, nor does it contemplate direct payment to the general funds of private institutions. Subsection (1) specifically refers to payments "to supplement the present school bus transportation system for the aid and benefit of all pupils," and subsection (2) specifies the "means" by which the county may provide such transportation, as quoted *supra*. None of these "means" bears any similarity to the means Fiscal Court has utilized here without statutory authorization.

The appellant argues that because subsection (2) uses "may" in describing the means rather than "shall" or "must" it contemplates the use of other means as well. KRS 446.010(20) provides that "may" as used in Kentucky statutes is permissive and this is true except where the context requires otherwise. *See Smith v. Wilson*, Ky., 269 S.W.2d 255, 256 (1954). We think the statute used "may" because the statute permits county fiscal courts to "supplement the present school bus transportation system," but does not require them to do so. We need not decide whether the means listed in subsection (2) is literally exclusive, because it is clear, at the least, that the list provided contemplates utilizing existing governmentally operated transportation systems or governmentally contracting for the service, rather than direct payment to private institutions. The general principles of statutory construction, "*ejusdem generis*" and "*expressio unius est exclusio alterius*" apply. "It is a primary rule of statutory construction that the enumeration of particular things excludes the idea of something else not mentioned." *Smith v. Wedding*, Ky., 303 S.W.2d 322, 323 (1957). On "*ejusdem generis*" and "*expressio unius est exclusio alterius*" as primary rules of statutory construction, see also, *Bloemer v. Turner*, 281 Ky. 832, 137 S.W.2d 387 (1940), and *Jefferson County Fiscal Court v. Jefferson County*, 278 Ky. 68, 128 S.W.2d 230 (1939).

The argument has been made that *Fannin v. Williams* is inapplicable because the decision addresses public support of private education by providing school books, rather than providing transportation. However, the record shows that the only direct effect of the cessation of public funds is to decrease the

general funds available to the school. This might adversely affect the school's tuition, and perhaps its enrollment, by shifting additional financial burdens to the school, but it does not directly affect the transportation of any school child. In this respect the providing of funds for transportation expenses is no different than providing a salary supplement or a maintenance supplement to the school, or providing books to the school as in *Fannin v. Williams*. *Fannin* holds that private school instruction cannot be publicly aided:

> "In sum, the Kentucky Constitution contemplates that public funds shall be expended for public education. The Commonwealth is obliged to furnish every child in this state an education in the public schools, but it is constitutionally proscribed from providing aid to furnish a private education." *Id.* at 484.

■ We turn now to Sections of the Kentucky Constitution prohibiting support for sectarian or religious institutions in the name of education. Section 5 prohibits extending a "preference ... to any religious sect, society, or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity[.]" Section 189 provides:

> "No portion of any fund or tax now existing, or that may hereafter be raised or levied for educational purposes, shall be appropriated to, or used by, or in aid of, any church, sectarian or denominational school."

Ninety-nine percent of Fiscal Court's transportation subsidy is awarded to educational institutions that promote religious teachings and beliefs. Yet equivalent support for the public school optional educational programs is withheld.

These Kentucky constitutional provisions appear to restrict direct aid from state or local government to sectarian schools much more specifically and significantly than the only counterpart provision in the Federal Constitution, which is the "establishment of religion" clause in the First Amendment. Thus we find the restrictions deemed to apply in the less restrictive context found in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), helpful in deciding how to apply our own state constitutional provisions.[2] The United States Supreme Court struck down as unconstitutional a Pennsylvania statute allowing the state to provide funds *directly* to private schools to purchase "secular education services." It specified a three-part test for testing a statute of this nature against the "establishment of religion" clause in the First Amendment. The third prong of the test used in *Lemon v. Kurtzman* to strike the statute is that "the statute must not foster 'an excessive government entanglement with religion.'" 403 U.S. at 613, 91 S.Ct. at 2111. Justice Black explained, in his concurring opinion:

> "... a grave constitutional decision [must not] turn merely on cost accounting and bookkeeping entries.... The school is an organism living on one budget. What the taxpayers give for salaries of those who teach only the humanities or science without any trace of proselytizing enables the school to use all of its own funds for religious training.... sophisticated attempts to avoid the Constitution are just as invalid as simple-minded ones." 403 U.S. at 641, 91 S.Ct. at 2125.

In *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), the U.S. Supreme Court addressed the "establishment of religion" clause in the First Amendment of the United States Constitution, and held it was violated by statutory provisions pertaining to field trip services because the nonpublic school was the true recipient of the services and the public school authorities would be unable adequately to ensure secular use of the field trip funds without close supervision of the nonpublic institution, thus creating excessive church-state entanglement. The trial judge in the present case found this reasoning persuasive in applying § 5 of the Kentucky Constitution to the present case, and we agree.

■ On the other hand, the trial judge believed that "[t]here is no clear violation of

---

**2.** There is no Federal constitutional issue raised or decided in this case, either at trial or appellate level. We refer to decisions of the U.S. Supreme Court solely for their reasoning, and not as binding authority.

Section 189 ... (because) taxes have not been raised for educational purposes but were taken from the general fund." However, § 189 states in pertinent part that "[n]o portion of any fund or tax *now existing*," as well as of any fund "that may hereafter be raised or levied for educational purposes, shall be appropriated to or used by or in aid of any church, sectarian or denomination school." (Emphasis added). Because § 189 includes "any fund or tax now existing" as well as any tax "hereafter to be raised or levied for educational purposes," we perceive § 189 as well as § 5 applying to the present circumstances.

Therefore, for the reasons stated in this opinion, the judgment of the trial court is affirmed.

STEPHENS, C.J., and SPAIN and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which LAMBERT and REYNOLDS, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I must respectfully disagree with the conclusion reached by the majority opinion in this case because the use of general revenue county funds to provide a transportation subsidy for nonpublic school children is a matter of public safety. It does not involve any use of educational tax funds and does not involve the excessive entanglement with either church or state.

The transportation payments made by the Fiscal Court of Jefferson County for nonpublic school pupils does not violate KRS 158.115 or KRS 67.080(1)(a) or any section of the Kentucky Constitution. The payments are to supplement school bus transportation and for no other purpose. They merely supplement the nonpublic schools' own funds for the transportation of pupils. The record in this case is uncontroverted and the circuit court found that public school pupils already receive adequate transportation through the tax resources of the local Board of Education.

A complaint was instituted in an attempt to compel the Fiscal Court to either continue special public school transportation subsidies for certain optional programs of the public schools or to terminate all public subsidies for nonpublic school students on the basis that such subsidies are unlawful. KRS 158.115(1) states in pertinent part that any county may provide transportation from its general fund to supplement the present school bus transportation system for the aid of any pupil of any grade who does not live within reasonable walking distance of the school. Consequently the Fiscal Court has statutory authority to provide such funds because the word "may" is ordinarily regarded as discretionary rather than mandatory. *Skaggs v. Fyffe*, 266 Ky. 337, 98 S.W.2d 884 (1937).

Although this case does not involve a federal constitutional question, I find the reasoning of Justice Douglas writing for a unanimous United States Supreme Court in *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed 563 (1955), to be persuasive when he stated that "the legislature may select one phase of one field and apply a remedy thereby neglecting others." *Cf. Delta Air Lines, Inc. v. Commonwealth*, Ky., 689 S.W.2d 14 (1985) for the right of the state to classify.

The only unit omitted in this legitimate classification by the fiscal court is the program of optional instruction which is outside the regular public school attendance districts. There is nothing in the plain language of KRS 158.115 which prohibits the fiscal court from reimbursing directly or indirectly, non-public schools contractors who transport nonpublic school students who meet the standards established by KRS 158.115(1). The private agency may be used as a pipeline through which a public expenditure is made with the test being not who receives the money, but the character of the use for which it is expended. *Kentucky Building Commission v. Effron*, 310 Ky. 355, 220 S.W.2d 836 (1949). Here, the use is the safe bus transportation of nonpublic school students. Such expenditures are appropriated for a lawful purpose within the meaning of KRS 67.080(1)(a).

KRS 158.115 was enacted by the Kentucky General Assembly in 1944 in response to a

decision of this Court in *Sherrard v. Jefferson County Board of Education*, 294 Ky. 469, 171 S.W.2d 963 (1942), which declared that a statute requiring Boards of Education to furnish transportation for nonpublic school students was in violation of the Kentucky Constitution because it was an expenditure of taxes collected for education. The constitutionality of the new statute was first upheld in *Nichols v. Henry*, 301 Ky. 434, 191 S.W.2d 930 (1945).

Although not part of the holding, this Court acknowledged in *Rawlings v. Butler*, Ky., 290 S.W.2d 801 (1956), that money raised by taxation for education purposes by the Board of Education cannot be used in the transportation of nonpublic school children but that the fiscal court may pursuant to statute bear the expense of transporting children attending parochial or private schools. A straight per capita cost analysis for funding purposes was applied in the case of *Board of Education of Jefferson County v. Jefferson County*, Ky., 333 S.W.2d 746 (1960), which provided that none of the expenses of transporting nonpublic students comes from board of education funds.

*Fannin v. Williams*, Ky., 655 S.W.2d 480 (1983), which held unconstitutional a statute providing textbooks to children in nonpublic schools, drew a distinction between educational and health and safety purposes when it said "unlike the statute extending transportation to children in nonpublic schools, it is simply impossible to classify textbooks as anything but educational." It is difficult to envision any religious meaning in transportation.

This Court has stated that state educational tax revenues can be spent only to support public education but that transportation of nonpublic school students is actually a matter of health and safety and not education. Consequently, expenditures from the general funds of other agencies as distinguished from school or educational funds can be used for transporting nonpublic school students. A law is not automatically unconstitutional, even if it helps make the work of a religious organization easier or safer.

The Kentucky Constitution compels school attendance and requires the state to maintain an efficient system of common public schools and properly restricts all taxation for educational purposes to those common public schools. School attendance under our compulsory attendance law is a public purpose within the meaning of Section 171 of the Constitution. Providing transportation services to all school children, both public and private, for such attendance is also a valid public purpose. Such fiscal support is not an appropriation for educational purposes but rather a matter of public safety.

In reviewing a particular statute the meaning must be determined by the intent of the statute as gathered from the context. *Smith v. Wilson*, Ky., 269 S.W.2d 255 (1954). *Smith, supra*, supports the proposition that based on the circumstances and the intent of the statute, the options listed provide opportunities and not limitations on the various ways in which the purpose of the statute should be implemented. Therefore there was no violation of KRS 158.115.

The possibility that sectarian religious issues could become part of a government sponsored academic program can sometimes lead to a need for supervision or surveillance of the academic program within the nonpublic school. This is the kind of entanglement which the Establishment Clause and the United States Supreme Court have sought to avoid. *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977), found that a statute which allowed public money to fund private school field trips was unconstitutional based on a violation of the First Amendment Establishment Clause of the U.S. Constitution. The U.S. Supreme Court determined that the public authorities would be unable to insure the secular use of the field trip funds without close supervision and that such oversight would create an unconstitutional church and state entanglement. Unlike *Wolman, supra*, there is no allegation in this case that the funding is used for any purpose other than transporting students to the school building. There is no religious purpose. Consequently, the public authorities are not required to meddle in the affairs of any nonpublic or religious organization. There is no excessive government entanglement with

religion. *See Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

The majority opinion's characterization of *Lemon, supra,* as helpful in deciding this case is interesting. *Lemon* set out a three-part test for determining when a state law did not violate the First Amendment to the Federal Constitution: The law must have a secular purpose; it cannot advance or inhibit religion and it must not foster an excessive entanglement of church and state. Observers of the United States Supreme Court have noted that in her concurring opinion in *Board of Education of Kiryas Joel Village School District v. Grumet,* —— U.S. ——, 114 S.Ct. 2481, 129 L.Ed.2d 546 (1994), Justice O'Connor remarked that "the slide away from *Lemon* is well underway." Justice Scalia, in the same case, writing in dissent, noted that the *Lemon* rules have been twisted from superficial neutrality to outright hostility. Even using the *Lemon* test, the supplement to bus transportation has a clearly secular purpose in providing safety for school children, and it can hardly be said that it fosters excessive entanglement between church and state. Some believe that the future of Establishment Clause jurisprudence remains uncertain. *Cf. University of Richmond Law Review,* Case note, *The Lemon Test Rears its Ugly Head Again,* 27 U.Rich.L.Rev. 1153 (1993).

In the case of a local government supplement for school transportation there is no possibility that the bus program provides any academic material or even the possibility of religious instruction. There is absolutely no evidence in this record that a school bus ride for a nonpublic school child is anything other than what it is, a bus ride to a school building. Accordingly, school bus transportation is of a substantially different character with little or no opportunity to involve matters of religion and secular subjects thereby completely eliminating the need for governmental supervision which gives rise to excessive entanglement. *Cf. Levitt v. Committee for Public Education and Religious Liberty,* 413 U.S. 472, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973).

It should be obvious that any state aid to supplement bus transportation for nonpublic elementary school children is separate from any advancement of religious activities and provides no excessive entanglement between church and state. It would be very easy for an independent public auditor to make a limited audit of any expenses in connection with the school supplement using generally accepted accounting principles. The requirement of an audit which a fiscal court may wish to impose upon the transportation program is not an impermissible or excessive entanglement. Some level of governmental review of private school expenditures is constitutionally permissible. *Committee for Public Education and Religious Liberty v. Regan,* 444 U.S. 646, 100 S.Ct. 840, 63 L.Ed.2d 94 (1980), approved a state law which required nonpublic schools to submit to an audit of the vouchers and to verify the cost of reimbursed services and even permitted direct cash reimbursement to nonpublic schools. Such a funding mechanism was specifically approved as not in violation of the excessive entanglement principle. *See also Bowen v. Kendrick,* 487 U.S. 589, 108 S.Ct. 2562, 101 L.Ed.2d 520 (1988); *Effron, supra.*

The contention that the fiscal court lost all control of the funds allocated to nonpublic schools is erroneous because this is a matter which does not involve academic instruction and is easily segregated. The conclusion that the aid to nonpublic schools was therefore unaccountable and resulted in direct aid to the nonpublic schools is mistaken. The only legal support cited for such a proposition is *Wolman, supra,* which is a case involving textbooks, testing services, speech and hearing diagnostic services, materials and equipment as well as field trip transportation. It was not the lack of control exercised by state officials that was critical in finding certain of the *Wolman* provisions unconstitutional but rather the nature of the use. Provision by the state of services unrelated to the religious roles of schools was permitted. The problem involved only those areas of state support which could be easily adopted to support both secular and nonsecular subjects. Such direct support would be inappropriate if the level of supervision required to prevent nonsecular use would require excessive entanglement. *Committee*

*for Public Education and Religious Liberty v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).

This case presents none of the difficulties of *Wolman.* As noted in *Fannin, supra,* the purpose of bus transportation is health and safety, not education. There is no significant risk that the support of nonpublic school bus transportation could be used for a religious function. There is also no need for excessive state supervision of bus transportation to determine that it is not used for a religious purpose. Such a method of funding is not constitutionally different from that approved by this Court in *Effron, supra,* which concerns state support for the construction of nonprofit, religiously affiliated hospitals. This is exactly the level of review and supervision approved in *Wolman* and *Regan.* If the decision in *Wolman* has any application at all in Kentucky, it supports rather than negates the constitutionality of the supplemental transportation expenditures.

The fiscal court did not violate Section 5, Section 171 or 184 of the Kentucky Constitution when it provided supplemental funds for the transportation of nonpublic school students.

This Court said in *Nichols v. Henry,* 301 Ky. 434, 191 S.W.2d 930 (1946), that the statute does not violate Sections 5 and 171 of the constitution because the legislation for health and safety of children does not necessarily mean that the school might derive an indirect benefit. That fact alone is not sufficient to defeat the declared purpose and practical and wholesome effect of the law. *See also Rawlings, supra.*

Section 184 was not interpreted in either of those cases. It has no application here because the general funds of the county are the source of the transportation supplements and they are not raised or collected for education.

As noted earlier, the transportation of students to their respective elementary or secondary schools does not have a religious purpose nor a primary religious effect. *Cf. Regan, supra* 444 U.S. at 659, 100 S.Ct. at 849.

The majority opinion can be divided into two tracts: 1) it expresses a view that the transportation supplement is unconstitutional in application, and then 2) it determines that the application of any program would be unconstitutional ab initio because it gratuitously concludes that Section 189 of the Kentucky Constitution prohibits any fund or tax now existing may be used to aid any church, sectarian or denominational school. In reaching such a conclusion, it continues the approach that somehow by providing transportation, the religious school is assisted in the dissemination of denominational doctrine.

Any construction of Section 189 must be balanced with the application of Section 2 of the Kentucky Bill of Rights which provides for the right to worship Almighty God according to the dictates of individual conscience. The state may only infringe on the free exercise of religion when it does so in the pursuit of an overriding or compelling interest of the highest order, and only if it does so in the least restrictive manner possible. *Cabinet for Human Resources, Ky. Health Facilities v. Provincial Convent of the Good Shepherd, Inc.,* Ky.App., 701 S.W.2d 137 (1986).

Section 5 of the Kentucky Constitution not only prohibits giving preference to any religious sect, but it also clearly states that no one should be compelled to send a child to any school to which he may be conscientiously opposed. Section 5 concludes by stating "no human authority shall, in any case whatever, control or interfere with the rights of conscience." Parents who choose to send their children to nonpublic schools have long willingly borne a significant financial burden in order to follow their conscience. They certainly do not want any excessive entanglement with any state funds because with state money comes eventual state control.

*Kentucky State Board for Elementary and Secondary Education v. Rudasill,* Ky., 589 S.W.2d 877 (1979), *Cert. Denied,* 446 U.S. 938, 100 S.Ct. 2158, 64 L.Ed.2d 792 (1980) also stated that if the legislature wishes to monitor the work of private schools in accomplishing the constitutional purpose of compulsory education, it may do so by appropriate standardized achievement testing. Surely this principle could be applied to the totally nonacademic audit of funds used to provide supplemental payments for school bus trans-

portation. Such an audit would be nonintrusive and would provide no entanglement with religion.

The majority opinion affirms the decision of the circuit judge in large part but it rejects the analysis of the circuit court in regard to Section 189. It would appear that the majority opinion provides a kind of selective approval in substituting its conclusion of law for that of the circuit judge. Any fair reading of the plain words of Section 189 shows that it relates only to taxes raised for educational purposes. This case does not involve funds raised for educational purposes. It merely involves general revenue funds from a county government. The majority opinion has set out a mistaken premise which obviously produces a mistaken conclusion.

I would reverse the decision of the trial judge because the Jefferson Fiscal Court has not violated the Kentucky Constitution in any regard, nor are KRS 158.115 and KRS 67.080 unconstitutional as applied to this case.

LAMBERT and REYNOLDS, JJ., join in this dissent.