Stephen NEAL, Appellant,

v.

FISCAL COURT, JEFFERSON COUN-
TY, Kentucky; Archdiocese of
Louisville, Appellee.

No. 96–SC–000566–TG.

Supreme Court of Kentucky.

March 25, 1999.

Irwin H. Cutler, Jr., Dennis Franklin Janes, Herbert L. Segal, Segal, Isenberg, Sales, Stewart, Cutler & Tillman, Louisville, John Frith Stewart, Stewart & Roelandt, Crestwood, for Appellant.

Stuart L. Adams, Jr., Louisville, Paul B. Whitty, Jefferson County Attorney's Office, Louisville, John J. Ford, Ford, Klapheke & Meyer, Louisville, Edward L. Schoenbaechler, Goldberg & Simpson, PSC, Louisville, for Appellee.

GRAVES, Justice.

This case involves the Jefferson County Fiscal Court's most recent legislation pursuant to KRS 158.115 to constitutionally provide approximately sixty-five percent of the total cost of transporting non-public elementary school students in Jefferson County, Kentucky. The Jefferson Circuit Court ruled that Fiscal Court Resolution 34 creates a lawful means of allocating funds for the transportation of non-public elementary school children consistent with KRS 158.115. Stephen Neal, a resident and taxpayer of Jefferson County who was a plaintiff in an earlier case, *Brady v. Fiscal Court of Jefferson County*, 885 S.W.2d 681 (1994) appealed and, pursuant to CR 74.02(2), this Court ordered a transfer of the appeal. After hearing oral argument and reviewing the record, we affirm the trial court.

### BACKGROUND

Established in Kentucky case law is a lengthy history regarding the constitutionality of state-funded transportation for children choosing to attend either private or parochial rather than public schools. First, in *Sherrard v. Jefferson County Board of Education*, 294 Ky. 469, 171 S.W.2d 963, 967 (1942), our highest Court held that the board of education could not provide private school students the same transportation rights as public school students without violating the Kentucky Constitution:

The state has no authority to maintain a sectarian school.... [I]t would seem necessarily to follow that when pupils of a parochial school are transported [on state subsidized buses] that such service would ... be [deemed to be] in aid of that school.

Accordingly, the Court held that funding identical transportation privileges for both private and public school students offended § 184 of the Kentucky Constitution (prohibiting the use of tax money for other than common school educational purposes unless submitted and agreed to by voters); § 171 (requiring that taxes levied and collected be used exclusively for public purposes); and § 189 (prohibiting the use of "any fund or tax ... in aid of any church, sectarian or denominational school.")

As a result of the *Sherrard* decision, the General Assembly enacted KRS 158.115, permitting the use of general rather than tax funds for both private and public school transportation:

(1) Each county may furnish transportation *from its general funds, and not out of any funds or taxes raised or levied for educational purposes* or appropriated in aid of common schools, to supplement the present school bus transportation system for the aid and benefit of ... any pupil of any grade who does not live within reasonable walking distance of the school attended by him in compliance with the compulsory school attendance laws and where there are no sidewalks along the highway he is compelled to travel.

(2) Each county may provide transportation by means of local board of education operated transportation systems, transit authorities organized and operating pursuant to KRS Chapter 96A, local governmental mass transit systems, and individual contracted buses and vehicles. (Emphasis added)

The third paragraph of the Preamble to Chapter 156 of the 1944 Acts of the General Assembly, which was codified as KRS 158.115, states:

Whereas, such bus transportation is now furnished to children attending the common schools and can be furnished with little or no additional cost to children attending schools other than common schools under the compulsory school attendance laws of the Commonwealth of Kentucky and traveling the same routes....

Subsequently, beginning with the decision in *Nichols v. Henry*, 301 Ky. 434, 191 S.W.2d 930 (1945), KRS 158.115 was held not to violate Sections 3, 5, 26, 171, and 180 of the Kentucky Constitution. Specifically, the statute was found to be a legitimate "exercise of police power for the protection of childhood against the inclemency of the weather and from the hazards of present-day highway traffic." *Id.* 191 S.W.2d at 932.

In *Rawlings v. Butler*, Ky., 290 S.W.2d 801 (1956), the Court revisited the issue and upheld a Nelson County Fiscal Court subsidy to the school board sufficient to cover the per capita cost of transporting parochial school children on the same buses used by the school board in its transportation system for public school children. The "fiscal court may under KRS 158.115 bear the expense of transporting children attending parochial or private schools." *Id.* at 807; *see also Board of Education of Jefferson County v. Jefferson County*, Ky., 333 S.W.2d 746 (1960) (permitting county pursuant to KRS 158.115 to expend money from its general fund for transportation of students attending private schools.)

In succeeding years, the Jefferson County Fiscal Court assumed financial responsibility for transporting Jefferson County public school students to several elective educational programs in addition to providing its prior private school subsidies. Subsequently, because of county budget reductions, the Jefferson Fiscal Court transportation subsidies were reduced, and ultimately, the public school subsidies were entirely eliminated while the private and parochial school funding was merely limited, with subsidy eligibility determined based upon the average per capita tuition costs charged by the participating private schools. As a result of these changes, several Jefferson County taxpayers, in the direct predecessor to this case, filed an action against the Fiscal Court in *Fiscal Court of Jefferson County v. Brady*, Ky., 885 S.W.2d 681 (1994).

In *Brady,* this Court set forth five perceived constitutional violations with the method implemented by the Jefferson Fiscal Court to allocate and administer school transportation subsidies:

1. Funds were paid directly from the Fiscal Court to the parochial or private school receiving the subsidies. "[S]ince Fiscal Court loses all control of the funds allocated to the non-public schools, it must be characterized as direct aid to the recipient institution. After payment, the manner in which the money is expended is controlled solely by the recipient school." *Id.* at 684.

2. Available funds were expended by the Fiscal Court exclusively for the benefit of private and parochial school children, to the exclusion of all public school children for optional instructional programs. *Id.*

3. The particular payment system violated KRS 158.115 because the funds were paid directly to the participating schools and therefore, none of the acceptable means delineated in Subsection (2) of KRS 158 .115 were employed to subsidize the private and parochial school transportation. *Id.*

4. Only select private and parochial schools enjoyed the benefit of the Fiscal Court subsidies. Receipt of funds hinged upon (a) whether the applicable school provided its own means of transportation and (b) whether the tuition charged by that school did not exceed $3,000 per student per year. In effect, the recipient school controlled the right to receive the subsidy solely by regulating the tuition charged. There was "no necessary correlation with either the financial resources actually available to the pupil who pays tuition or with the pupil's ability to provide for his or her own transportation." *Id.*

5. If the subsidized transportation issue were analyzed as only a "public heath and safety" provision implemented exclusively to safeguard Jefferson County school children, as opposed to a private or parochial school budget supplement, then the system withheld "protection for nonpublic school children depending on which school they elect[ed] to attend." *Id.*

As a result of these problems, we first concluded, as in *Fannin v. Williams,* Ky., 655 S.W.2d 480 (1983) where the state had supplied textbooks to private and parochial schools, " 'that regardless of its salutary purpose', the method used to assist nonpublic schools violated Sec. 171 of the Kentucky Constitution." *Brady, supra,* at 684.

"The essence of the child benefit argument is that the aid flows directly and exclusively to the child and only indirectly, if at all, to the parochial school." *Fannin,* 655 S.W.2d at 483. This is not the essence of the present direct payment scheme. When the payment is made directly to the nonpublic school, § 184 of the Kentucky Constitution, which provides that public money cannot be expended for education other than in common schools without a vote of the people, is violated, because public money is being expended for the benefit of the private institution rather than providing specifically for the health and safety of all children.

*Id.* at 685.

Thus, "providing funds for transportation expenses is no different than providing a salary supplement or a maintenance supplement to the school, or providing books to the school as in *Fannin v. Williams." Brady, supra* at 686.

Second, we distinguished between providing state subsidized transportation to nonpublic school children *along* with public school children, and providing direct payments to only select private and parochial schools. We noted that essentially all of the Fiscal Court's subsidy was allocated to schools with religious affiliations, while no equivalent amount was given to the public school optional education programs. *Id.* at 686. Accordingly, we stated that KRS 158.115 "contemplates transportation furnished by Fiscal Court to 'all pupils' equally. It does not contemplate furnishing transportation selectively to some pupils and not to others, nor does it contemplate direct payment to the general funds of private institutions." *Id.* at 685.

Third, we compared our applicable Kentucky constitutional provisions with those of our Federal Constitution and determined

that our state provisions mandate a much stricter interpretation than the Federal counterpart found in the First Amendment's "establishment of religion clause." *Id.* at 686. We therefore concluded that given the more exacting criteria required by our own Constitution, § 5 in particular, the prohibition of a "preference . . . to any religious sect, society, or denomination" was violated due to excessive church-state entanglement. *Id.*

Finally, we held that the Fiscal Court's actions violated § 189 of the Kentucky Constitution, which provides:

> No portion of any fund now existing, or that may hereafter be raised or levied for educational purposes, shall be appropriated to, or used by, or in aid of, any church, sectarian or denominational school.

"Because § 189 includes 'any fund or tax now existing' as well as any tax 'hereafter to be raised or levied for educational purposes,' we perceive § 189 as well as § 5 applying to the present circumstances." *Id.* at 687.

As a result of the *Brady* decision, on May 23, 1995, the Jefferson County Fiscal Court adopted Resolution 24 which stated: "The monies reserved in Budget Ordinance 1 . . . shall be disbursed for the transportation of elementary grade school pupils according to the provisions of Section 2 of this resolution." This resolution was subsequently repealed and in its place, on June 27, 1995, the Fiscal Court adopted Resolution 34, which differs from Resolution 24 in pertinent part as follows:

> *Section 1.* The monies reserved in Budget Ordinance 1 . . . shall be disbursed to supplement the present school bus transportation system for the aid and benefit of non-public school pupils of elementary grade attending non-public schools in compliance with the compulsory school attendance law of the Commonwealth of Kentucky who do not reside within reasonable walking distance of the school they attend and where there are no sidewalks along the highway they are compelled to travel, in accordance with KRS 158.115 and to the extent allowed under the decision of the Supreme Court of Kentucky in *Fiscal Court of Jefferson County v. Brady.*

> *Section 2.* Monies disbursed pursuant to Section.1 above, shall be paid to the individual local Board of Education operated transportation system of contracted bus and vehicle companies. No funds will be paid directly to schools, parents or students.

Following Resolution 34's adoption, the Jefferson Fiscal Court filed this action seeking a declaration that the resolution and the Fiscal Court's implementation of the resolution was consistent with KRS 158.115 and was constitutionally proper. The Jefferson Circuit Court found Resolution 34 to be a lawful method of allocating transportation subsidies.

## CONSTITUTIONALITY OF RESOLUTION 34

■ Appellant argues that Resolution 34 has the effect of unconstitutionally aiding private and parochial schools. He opines that if the Fiscal Court uses county funds to make it easier and cheaper to attend a private school than would otherwise be the case, the private and parochial schools' enrollment and tuition receipts will increase, and a larger audience will be exposed to the schools' religious message. Thus, the schools, and not just their students, will benefit from the Fiscal Court's subsidies. Appellant urges that under §§ 3, 5, 171, 184 and 189 of the Kentucky Constitution, the government has no power to financially assist religious institutions.

The Appellees respond that the current plan is constitutional because the funds in question are not tax funds and are paid directly to the entities responsible for transporting the students rather than to the private or parochial schools themselves. Furthermore, Appellees argue that the Fiscal Court's decision to exclude public school children from the plan is not fatal because KRS 158.110 mandates that the Board of Education provide transportation to all public school children who do not live within a reasonable walking distance to the nearest school. Thus, Appellees conclude that public school children would never be the intended recipients under KRS 158.115. Finally, Appellees correctly point out that in *Nichols v.*

*Henry, supra,* the Court did, in fact, uphold KRS 158.115 as constitutional on its face. Thus, the constitutionality of the statute having been previously established, the sole issue is whether the means adopted by Resolution 34 is a lawful route toward this legitimate and reasonable end.

There is no question that the facts present in this case differ from those in *Brady.* Pursuant to Resolution 34, the transportation subsidy no longer provides that money shall be paid to any private or parochial school for transportation cost reimbursement. Rather, the transportation subsidies are paid directly to "the individual local Board of Education operated transportation system of contracted bus and vehicle companies," with no funds passing into the hands of the private or parochial schools. This procedure is in direct accordance with KRS 158.115(2), which specifically states that the county may provide such transportation "by means of local board of education operated transportation systems, transit authorities organized and operating pursuant to KRS Chapter 96A, local governmental mass transit systems, and individual contracted buses and vehicles." Further, the benefit provided under Resolution 34 goes directly toward the safety and welfare of elementary age school children and not into the accounts of non-public schools. We agree with the trial court that the present payment scheme is fundamentally different from that challenged in *Brady.*

Also unlike the *Brady* plan, Resolution 34 no longer establishes a tuition ceiling as a requisite to eligibility for the transportation subsidy. As currently implemented, Resolution 34 merely requires that an application be submitted by the private or parochial school. We deem this to be a major distinction, in that a recipient school can no longer control the right to receive the subsidy solely by regulating the tuition charged.

The recent decision of *Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997), liberalized the circumstances under which aid to parochial educational institutions is permitted under the United States Constitution. In *Agostini,* the United Stated Supreme Court lifted an injunction thereby allowing New York to use federal funds to provide educational services on the premises of parochial schools to those students who had difficulty achieving state "student performance standards." The Court was swayed in large measure by the fact that the funds in question were available "to both religious and secular beneficiaries on a non-discriminatory basis." *Id.,* 117 S.Ct. at 2014. A distinctive element to New York's program was that no funds designated for the program "ever reach the coffers of religious schools." *Id.* at 2013. Resolution 34, similar to the program in *Agostini,* makes no specific reference to only parochial schools, and allocates no funds directly to any non-public schools.

In *Jackson v. Benson,* 218 Wis.2d 835, 578 N.W.2d 602 (1998), the Wisconsin Supreme Court was asked to review the constitutionality of the amended Milwaukee Parental Choice Program (MPCP) which permits fifteen percent of the student membership of the Milwaukee Public Schools to attend at no cost to the student any private school located in the City of Milwaukee, subject to certain eligibility requirements. Under the program, students are eligible if they reside in Milwaukee, attend public schools (or private schools in grades K–3) and meet certain income requirements (less than 1.75 times the Federal Poverty Level). *Id.* at 617. Beneficiaries are selected on a random basis from all students who apply and meet the criteria. *Id.* Under the plan, the state is required to pay the aid to each participating student's parent or guardian. *Id.*

In upholding the constitutionality of the plan, the Wisconsin Supreme Court concluded that "the amended MPCP does not violate the Establishment Clause because it has a secular purpose, it will not have the primary effect of advancing religion, and it will not lead to excessive entanglement between the State and participating sectarian private school." *Id.* at 611.

The amended MPCP, therefore, places on equal footing options of public and private school choice, and vests power in the hands of parents to choose where to direct the funds allocated for their children's benefit. We are satisfied that the implementation of the provisions of the amended

MPCP will not have the primary effect of advancing religion.

*Id.* at 619.

The *Jackson* Court further held that the amended MPCP did not violate the "benefits clause" of art. I, § 18 of the Wisconsin Constitution which provides, "nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries." *Id.* at 620. The court opined that "public funds may be placed at the disposal of third parties so long as the program on its face is neutral between sectarian and nonsectarian alternatives and transmission of funds is guided by the independent decisions of third parties." *Id.* at 621.

In *Brady, supra,* we suggested a plan such as is set forth in Resolution 34 as an alternative to the impermissible direct payment to private schools.

> There is a fundamental difference between providing school transportation to nonpublic school children along with public school children through Fiscal Court appropriation to the board of education, and providing direct payment to selected eligible schools.

*Brady, supra,* at 685.

We are of the opinion that Resolution 34 is a legal means of providing safe transportation of children who attend non-public schools.

This Court has previously adopted a child benefit rationale in which aid to parochial schools is constitutional as long as the "aid provided flows directly and exclusively to the child and only indirectly, if at all, to the parochial school." *Id.* at 685. The holding in *Nichols, supra,* clearly recognizes that:

> [W]ith the hazards and dangers of the highway ..., and with our compulsory school attendance laws, applying to all children and being rigidly enforced, as they are, it cannot be said with any reason or consistency that ... legislation to provide our school children with safe transportation is not ... legislation for a public purpose. Neither can it be said that such legislation ... is in aid of a church, or of a private, sectarian, or parochial school, nor that it is other than what it is designed and

> purports to be ... legislation for the health and safety of our children, the future citizens of our state.

*Nichols, supra* at 934–935.

Resolution 34 in its intended and practical application provides safe transportation for elementary school children attending non-public schools. The children are clearly the primary beneficiaries of this subsidy.

Any incidental benefit to private institutions educating the recipients of the transportation subsidy does not make the ordinance illegal. "The fact that in a strained and technical sense the school might derive an indirect benefit from the enactment, is not sufficient to defeat the declared purpose and the practical and wholesome effect of the law." *Id.* 935. Under Resolution 34 any benefit to private and parochial schools is only incidental and, therefore, not unconstitutional.

In *Agostini, supra,* the United States Supreme Court quoted the earlier decision of *School District of Grand Rapids v. Ball,* 473 U.S. 373, 393, 105 S.Ct. 3216, 3228, 87 L.Ed.2d 267 (1985), holding that aid which "resulted in an effect that was 'indirect, remote, or incidental' " would be upheld, and would only be invalidated when "the aid resulted in 'a direct and substantial advancement of the sectarian enterprise'." *Agostini,* 117 S.Ct. at 2009. The funds allocated under Resolution 34 flow directly to the providers of transportation, providing only an "indirect, remote or incidental" effect on the nonpublic schools. The main effect is greater protection for the safety and welfare of the children that attend the schools.

■ Furthermore, contrary to Appellant's assertions, nothing in the statutes or case law suggests that a fiscal court's subsidy must be allocated evenly between transportation for both public and non-public students or that it must necessarily include all children. The Fiscal Court under KRS 158.115 has the authority to provide school bus transportation subsidies for all students it deems by its discretion are in need of safer transportation. As explained in *Rawlings v. Butler,* 290 S.W.2d 801 (1956) the clear history of KRS 158.115 and its supporting case law demon-

strates the General Assembly's intent to allow the fiscal courts to subsidize the transportation of private school students, precisely because the local boards of education could not. *Id.* at 807.

The *Rawlings* decision clearly supports the means adopted by Resolution 34 to partially subsidize the transportation of private school students by funds set aside by the Fiscal Court. In *Brady, supra,* this Court acknowledged that the use of fiscal funds for the transportation of non-public school children was constitutional.

> While we respect the reasons behind the decision of the Jefferson County Fiscal Court to selectively fund the budget of certain specified non-public schools to assist them in the payment of their transportation expense, we agree with the trial court that the funding here is fundamentally different from *Nichols v. Henry,* and *Rawlings v. Butler, supra.* These cases involved payment to the local board of education, a public institution, supplementing the local boards transportation system so that the transportation needs of students attending sectarian schools would be addressed within the concept of protecting 'all' students 'against the inclemency of the weather and from the hazards of present-day highway traffic'. *Nichols v. Henry,* as quoted *supra.*

*Brady, supra* at 684.

Further, the transportation of public school children is fully funded by the local school board. The funds available for public school transportation amount to over 24 million dollars. Resolution 34 only funds approximately 65 percent of the transportation expenses of children who attend non-public schools. Therefore, even with Resolution 34 allocating $480,000 to subsidize non-public school transportation, the level of safety is higher for those attending public schools than non-public schools. The purpose of Resolution 34 is to provide safety for non-public school children, since transportation for public school children is already fully provided by the local school board.

Resolution 34 works toward the safety and welfare of all elementary school children of Jefferson County by providing supplementary funding of bus transportation for non-public elementary school students who would not otherwise have such protection. The transportation subsidy procedure of Resolution 34 clearly complies with the holding in *Brady* and is consistent with the Kentucky Constitution and Kentucky Revised Statutes.

The judgment of the Jefferson Circuit Court is affirmed.

LAMBERT, C.J., COOPER, GRAVES, and WINTERSHEIMER, J.J., concur.

JOHNSTONE, J., dissents by separate opinion in which STEPHENS, and STUMBO, J.J., join.

STEPHENS, J., dissents by separate opinion in which JOHNSTONE, and STUMBO, J.J., join.

JOHNSTONE, Justice, dissenting.

I respectfully dissent from the majority opinion and preface my remarks by stating that good intentions alone do not make law that proves constitutionally sound. I do not doubt the good intentions of the members of the Jefferson Fiscal Court. Although I agree with the result reached by Justice Stephens' dissent, I write separately to address in detail the decision in *Fiscal Court of Jefferson County, Kentucky v. Brady,* Ky., 885 S.W.2d 681 (1994). As a result of the *Brady* decision, the Fiscal Court adopted Resolution 24 on May 23, 1995. On June 27, 1995, the Fiscal Court repealed Resolution 24 and adopted Resolution 34 in its place.

In *Brady,* we concluded that there were five problems with the Jefferson Fiscal Court's method of allocating and administering school transportation subsidies. *Id.* at 683–84. Resolution 34 addresses and resolves some of the five problems, but does not resolve all of them. Therefore, Resolution 34 is still fatally defective.

### Problem One

The first problem in *Brady* was that the funds were paid directly to the parochial schools. Pursuant to Resolution 34, the transportation subsidy plan no longer provides that money shall be paid directly to any

private or parochial school for transportation cost reimbursement. Rather, transportation subsidies are now paid directly to the contract bus services. I agree with the court below that the present payment scheme is fundamentally different from the payment scheme outlined in *Brady*, so it does not offend the *Brady* decision.

### Problem Two

The second problem in *Brady* was that the funds were expended solely for the benefit of parochial school students. Just as before the *Brady* decision, the Fiscal Court transportation subsidies are exclusively expended for the benefit of private and parochial school children under Resolution 34. While the Appellees contend that *Brady* merely held that payment of the subsidy funds directly to private and parochial schools was permitted and that the Fiscal Court's total exclusion of public school children was entirely discretionary and permitted under *Brady*, I disagree.

Both Appellees argue that the Fiscal Court's decision to exclude all public school children and any elective public educational programming is not fatal. They contend that KRS 158.110 *mandates* that the Board of Education provide transportation to all public school children attending public school who do not live within a reasonable walking distance to the nearest school. Therefore, according to Appellees, these children would never be the intended recipients under KRS 158.115. However, the clear language of KRS 158 .110(1) states that "[b]oards of education *may* provide transportation from their general funds or otherwise for any pupil of any grade to the nearest school...." (Emphasis added.) The words *"must provide"* appear nowhere in the plain language of the statute. Consequently, the statute is clearly discretionary, and not mandatory in nature.

Appellees also acknowledge that some public school children who have chosen to attend a public school other than the school designated by the Board of Education are *not* being provided with bus transportation because it would not be economically feasible to establish service. Thus, we can only conclude that Appellees' contention that "the cost of public school transportation ... is

already fully funded by [over twenty-four million in] tax dollars" is simply not correct.

### Problem Three

The third problem in *Brady* was that only select private and parochial schools were eligible on a tuition cost charged basis. The record in the instant case shows that Resolution 34, unlike the resolution in *Brady*, no longer establishes a tuition ceiling as a prerequisite to eligibility for the transportation subsidy funds. As currently implemented, the resolution merely requires that an application be submitted by the private or parochial school seeking funds. Therefore, the third *Brady* problem is addressed and solved by Resolution 34.

### Problem Four

The fourth problem in *Brady* was that a strict "public health and safety" analysis was flawed, because payments were withheld from some students based upon the particular private or parochial school they chose to attend. However, as noted above, the record demonstrates that Resolution 34 no longer requires a tuition ceiling for private or parochial schools to receive transportation subsidies from the Fiscal Court. Even though the "public health and safety" issues from *Brady* are not present under Resolution 34, a "public health and safety" analysis demonstrates that the Resolution, in its application, is fatally flawed.

Appellees correctly contend that in *Nichols v. Henry*, Ky., 301 Ky. 434, 191 S.W.2d 930 (1945), the Court upheld KRS 158.115 as constitutional on its face. Furthermore, Appellees cite *Rawlings v.. Butler*, Ky., 290 S.W.2d 801, 807 (1956), in support of their positions. However, *Rawlings* specifically stated that "[i]n *Nichols v. Henry* ..., we upheld the constitutionality of this 1944 Act as one not designed to aid secular or private schools, but to protect *all* children from the hazards of the highway who under our compulsory attendance law were forced to attend school." (Emphasis in original). Therefore, we agree with Appellees that, in the past, KRS 158.115 was held to be constitutional in its plain language. However, Appellees ignore the fact that facial constitutionality does

not guarantee that the application will be constitutional. I emphasize that our holding in *Rawlings* stressed that aid must be available to protect all children from the hazards of the highway, and not just parochial school students.

Moreover, the record shows that under Resolution 24, the repealed predecessor of Resolution 34, the vast majority of the Fiscal Court's funds would have been allocated to the public schools based upon the school's application and the number of students requiring bus transportation. Faced with this apparently undesirable result, the Fiscal Court instituted a new program based upon the newly-enacted Resolution 34, which again diverted over ninety percent of the available funds to aid parochial schools. It seems that the health and safety needs of the public and non-parochial private school students have effectively been excluded from participation in the "health and safety" program.

Accordingly, because the application of Resolution 34 is unconstitutional, it does not solve the fourth problem described in *Brady*.

### Problem Five

The fifth and final problem in *Brady* was that the funds were not disbursed in compliance with the methods prescribed by KRS 158.115(2). As noted above, the Fiscal Court has altered its disbursement practice to distribute transportation subsidy funds either to the Board of Education or directly to contract bus services. I agree with the ruling of the court below that either one of these methods is permissible under KRS 158.115(2), since both of these means are specifically enumerated in the statute as acceptable transportation methods.

### Conclusion

In summary, while the Fiscal Court's most recent attempt to allocate funds to the parochial schools corrects some of the concerns voiced in *Brady*, several fundamental issues from *Brady* are yet to be resolved. As a result, I would find that Resolution 34, as applied, is inherently flawed and constitutionally invalid.

STEPHENS and STUMBO, JJ., join this dissent.

STEPHENS, Justice, dissenting.

The issue before this Court is whether it is permissible for the Fiscal Court of Jefferson County (Fiscal Court) to subsidize the transportation system for the Catholic School System in Jefferson County (Catholic Schools) which is operated by the Catholic Archdiocese of Louisville (Archdiocese). The majority has found that such a subsidy is permissible under the Constitution of the Commonwealth. I cannot agree with this analysis and therefore I must respectfully dissent.

The reason for my dissent on this issue is a question raised, but left unanswered by the majority. As I will discuss subsequently, and in greater detail, the question posed is how does having the taxpayers of Jefferson County pay for the transportation of Catholic school children make this transportation any safer than if it were paid for by either their parents or the Archdiocese itself? If this question strikes the reader as bizarre, then I, too, agree because I find it bizarre and unanswerable. However, it is the one that the majority has raised by its decision.

Since the majority opinion discusses the facts of this case in detail, I will not recount them in a duplicative fashion, but I shall take the time to lay out certain additional details that I believe are necessary for the proper resolution of this case. There is no question that the purpose of the Archdiocese's operation of the Catholic Schools is to further a religious, as well as an educational goal. I mention the religious purpose of these schools to lay the appropriate foundation for an analysis of the constitutionality of the resolutions passed by the Fiscal Court. Accordingly, fiscal aid to private religious schools must be for another purpose than to simply defray the costs of a private religious education. *Nichols v. Henry*, 301 Ky. 434, 191 S.W.2d 930 (1945).

The precise structure of under what circumstances payments flowed from the Fiscal

Court to the various bus companies is highly relevant to the inquiry at hand. Apparently the only role the Fiscal Court played in this matter was to issue checks to the bus companies contracted by the Archdiocese to transport the students to and from the Catholic Schools. The Archdiocese handled all decisions regarding schedules and routing. At no point did the Fiscal Court enter into any negotiations with any bus company. I feel comfortable in saying that all the Fiscal Court did here was pay the bus companies for the *previously contracted services.*

The Fiscal Court made the payments on June 7 and 13, 1998, to the various bus companies that the Archdiocese had contracted. It made the payments *after* the school year had ended. Since the contracts with these bus companies required the Archdiocese to pay on a monthly basis, the Fiscal Court paid for services that had *already* been paid for by the Archdiocese. The relevance of the timing of the payments to this case is that the Fiscal Court was paying for services *which had already been rendered.*

While in a normal case involving aid to private schools I would discuss the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution, that is unnecessary since the Constitution of the Commonwealth of Kentucky provides substantially stronger protections from encroachment by the state or religion into their respective spheres from the other. U.S. Const. amend. I; Ky. Const. § 5. While the majority pays lip service to the idea that the Commonwealth's Constitution mandates a "much stricter interpretation" of the establishment of religion clause than that the Federal Constitution, later in this same opinion it cites to a recent United States Supreme Court decision which "liberalized the circumstances under which aid to parochial educational institutions is permitted." Op. at 911. (*citing Agostini v. Felton,* 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997)). If the Constitution of the Commonwealth mandates a "much stricter interpretation" of the establishment clause, then how does the action of the United States Supreme Court have any bearing on this issue? Since the Constitution of the Commonwealth places greater limits than does the Federal Constitution on what aid the Commonwealth can give to private religious groups, I will address this issue by discussing the cases of this Court which interpret the relevant sections of the Kentucky Constitution.

In *Nichols v. Henry,* 301 Ky. 434, 191 S.W.2d 930 (1945), this Court held that furnishing transportation to private school students was a legitimate "exercise of the police power for the protection of childhood against the inclemency of weather and from the hazards of present-day highway traffic." *Id.* at 932. The issue in *Nichols* was similar to the instant case in that the constitutionality of a statute that provided transportation for private religious school students was at issue. In that opinion, this Court reasoned that since only an indirect benefit was provided to the religious schools themselves and that the provision of transportation was a legitimate exercise of the police power, the statute was constitutionally sound. *Id.* at 935.

In *Fannin v. Williams,* Ky., 655 S.W.2d 480 (1983), the issue before this Court was whether supplying textbooks to the students of private religious schools was permissible for the state. The *Fannin* court distinguished its decision from *Nichols* by focusing on the purpose of the proposed aid. "If the exclusive purpose of the statute is to pay the expenses of children in private schools, this constitutional provision has been directly violated." *Id.* at 484. In *Nichols,* this Court found that the aid supplied was permissible as it was being supplied pursuant to the state's police powers. In *Fannin,* this Court found that the textbooks were being supplied for an educational purpose that was impermissible when considered with the other facts of *Fannin.*

*Fannin* is relevant to the instant case for the proposition that aid cannot be supplied to a private religious school unless it is for a purpose other than to reduce the cost of a religious education. When combined with the holding of *Nichols,* I believe that the lesson to be taken is that aid is only permissible when it is being given for a non-educational purpose (i.e., aid is not being given simply to reduce the cost to the school or to the parents of a private religious education).

In the instant case there is no other reason offered for why the aid is being supplied. There is no reason to invoke the state's police powers because the means of transportation already provided from private sources does not pose a danger to the children's safety. The Fiscal Court would merely be taking over the already existing services, which, I assume, it feels is a reasonable and safe method of transporting them to school. Moreover, if there is a threat, there is no indication by the Fiscal Court how this threat is reduced by having the state pay for the same unsafe system of transportation.

One constitutional problem noted in *Fannin* was the fact that the request for textbooks did not come from the individual students or their families, but the request came from the administrator of the school that the student attended. *Id.* at 483. Likewise, in the instant case, the requests for transportation did not come from the students—all arrangements were made by the Archdiocese. Hence, this presents an additional constitutional infirmity previously outlined by our decisions.

Further, in *Fiscal Court of Jefferson County v. Brady*, Ky., 885 S.W.2d 681 (1994), this Court held that a transportation subsidy given by the Fiscal Court to private religious schools in Jefferson County was impermissible since, *inter alia*, payment was made directly by the Fiscal Court to the Office of the Catholic Schools. Accordingly, once that money had been paid, the Fiscal Court lost all control over those funds. The only difference between the instant case and *Brady* is that in the instant case the funds are paid to the designee of the Catholic Schools, while in *Brady* those funds were paid directly to the Catholic Schools. I believe that this is a distinction without a difference. The policy decision was made simply to circumvent the proscription of *Brady*.

The only issue that this Court is required to decide here is whether it is permissible for the Fiscal Court to pay the transportation expenses of the Catholic school children of Jefferson County. I believe that the correct application of §§ 3, 5, 171, 184, 186 and 189 of the Kentucky Constitution mandate that such payment be deemed unconstitutional.

*Nichols* permits the state to pay for the transportation of private school students to ensure their safety from the weather and traffic. I do not see how either of these threats are removed or even reduced by the Fiscal Court paying the transportation costs of the students. If the present method of transporting the students is unsafe, then what makes it safer by having someone other than the Archdiocese footing the bill? If the present method of transporting the students is safe, then having the Fiscal Court bear the cost is impermissible because there is no basis for the state to invoke its police powers.

I believe that what is occurring in this case is unfortunate, as well as being unconstitutional. The Fiscal Court claims legitimacy by saying that it is only doing so for the welfare of children lest they be struck by lightning or run over by cars on their daily trek to school. The reality is that no risk exists which requires the state to bear the costs of a religious school education. Catholic school children are perfectly safe on the same school buses that they have ridden on for years.

If the state can pay for transportation of students to protect them from the weather, then why cannot the same reasoning be employed to construct school buildings for such students? Certainly classes being held outside would present a threat to the children. The fact those school buildings already exist should not be a problem, because under the majority's analysis only the *threat* must exist—whether it has been appropriately addressed by the religious institution which runs the school is irrelevant to their analysis. It seems to me that the same logic could be employed to fund all food services for private religious schools as well. As one can see there is virtually no end to the ways the majority opinion permits widespread aid to private religious schools. Short of actually paying for the teachers themselves (and even those could be rationalized as a necessary item to make sure that the children were properly supervised during the day) there is no expense that the state could not be made to bear pursuant to the majority's stance. This would fly in the face of the clear wording and purpose of the Constitution of Kentucky.

I believe that with this decision the majority has commenced a process that will render the constitutional system which protects both the state and religion from encroachment by the other a wholly meaningless set of words. By avoiding the clear spirit of the relevant constitutional provisions in claiming that lowering the costs of a private religious school education is merely an incidental benefit, the majority is engaging in a tactic that violates the letter and the spirit of our Constitution.

Lowering the wall between the separation of church and state cuts both ways. That which the state aids, the state can also regulate and control. I believe that there is a distinct possibility that the day may come soon when the church will awake to see that the tail has begun to wag the dog. As a firm believer in separation of church and state for the protection of both institutions, I am sorry to see that this day has come to pass. While with a wink and nod, the majority has permitted the funding of private religious students' transportation costs to assure the "safety" of the students, I believe that same wink and nod shall return to the detriment of those who it would appear to be serving in this matter.

Therefore, I must respectfully dissent.

JOHNSTONE and STUMBO, JJ., join in this dissenting opinion.