**KENTUCKY OFFICE OF HOMELAND SECURITY; and Thomas Preston, in his Official Capacity as the Director of the Kentucky Office of Homeland Security, Appellants,**

v.

Michael G. **CHRISTERSON;** James F. Coffman; Lucinda Hedden Coffman; Jan Ewing; Emmett F. Fields; Alex Grigg; Edwin Hensley; Helen Kagin; Gary Maryman; David Ryan; and James K. Willmot, Appellees.

and

**American Atheists, Inc., Cross–Appellant,**

v.

Commonwealth of Kentucky, Kentucky Office of Homeland Security; and Thomas Preston, in his Official Capacity as the Director of the Kentucky Office of Homeland Security, Cross–Appellees.

Nos. 2009–CA–001650–MR, 2009–CA–001676–MR.

Court of Appeals of Kentucky.

Oct. 28, 2011.

Discretionary Review Denied by Supreme Court Aug. 15, 2012.

Jack Conway (argued), Attorney General of Kentucky, Tad Thomas (argued), Assistant Deputy Attorney General, Frankfort, KY, for Appellants/Cross–Appellees.

Ronald D. Ray, Crestwood, KY, Amicus Curiae Brief for Thirty–Five Kentucky State Senators.

Jack L. Richardson, Louisville, KY, Amicus Curiae Brief for Ninety–Six Kentucky State Representatives.

Vaughn Murphy, Frankfort, KY, Amicus Curiae Brief for The Family Foundation.

Edwin F. Kagin (argued), Union, KY, for Appellees/Cross–Appellant.

William E. Sharp, Louisville, KY, Amicus Curiae Brief for the American Civil Liberties Union.

Before VANMETER and WINE, Judges; SHAKE,[1] Senior Judge.

## OPINION

VANMETER, Judge:

The Kentucky Office of Homeland Security ("KOHS") and Thomas Preston, as the director of the KOHS (hereinafter collec-

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

tively referred to as "KOHS"), appeal from the order of the Franklin Circuit Court that granted summary judgment in favor of Appellees[2] and American Atheists, Inc. ("American Atheists") on the basis that KRS 39A.285[3] and KRS 39G.010 violate the First and Fourteenth Amendments to the United States Constitution and Section 5 of the Kentucky Constitution. American Atheists cross-appeals from the same order, which held that American Atheists lacked standing in the underlying action. After a thorough review of the parties' written and oral arguments, the record, and the applicable law, we affirm that portion of the Franklin Circuit Court judgment finding the American Atheists lacked standing. However, we find reversible error in finding the challenged statutes violate the First and Fourteenth Amendments of the United States Constitution and Section 5 of the Kentucky Constitution and, accordingly, reverse and remand this matter to the trial court for further proceedings.

The text of KRS 39A.285, styled Legislative Findings, provides:

The General Assembly hereby finds that:

(1) No government by itself can guarantee perfect security from acts of war or terrorism.

(2) The security and well-being of the public depend not just on government, but rest in large measure upon individual citizens of the Commonwealth and their level of understanding, preparation, and vigilance.

(3) The safety and security of the Commonwealth cannot be achieved apart from reliance upon Almighty God as set forth in the public speeches and proclamations of American Presidents, including Abraham Lincoln's historic March 30, 1863, Presidential Proclamation urging Americans to pray and fast during one of the most dangerous hours in American history, and the text of President John F. Kennedy's November 22, 1963, national security speech which concluded: "For as was written long ago: 'Except the Lord keep the city, the watchman waketh but in vain.' "

KRS 39G.010(2)(a) requires the executive director of the KOHS to:

Publicize the findings of the General Assembly stressing the dependence on Almighty God as being vital to the security of the Commonwealth by including the provisions of KRS 39A.285(3) in its agency training and educational materials. The executive director shall also be responsible for prominently displaying a permanent plaque at the entrance to the state's Emergency Operations Center stating the text of KRS 39A.285(3)[.]

On December 2, 2008, Appellees and American Atheists filed a complaint against KOHS, alleging that KRS 39A.285 and KRS 39G.010 violate the federal and Kentucky constitutions by establishing a religion in Kentucky.[4] They further alleged that as a result of the legislation, they suffered physical and emotional damages. KOHS filed a motion to dismiss, or in the alternative, for summary judgment. Appellees and American Atheists also filed a motion for summary judgment. By order entered August 26, 2009, the trial

---

**2.** Michael G. Christerson, James F. Coffman, Lucinda Hedden Coffman, Jan Ewing, Emmett F. Fields, Alex Grigg, Edwin Hensley, Helen Kagin, Gary Maryman, David Ryan, and James K. Willmot.

**3.** Kentucky Revised Statutes.

**4.** Jack Conway, Attorney General of the Commonwealth of Kentucky, was also named as a defendant but was summarily dismissed as a party by agreed order.

court granted summary judgment in favor of Appellees and dismissed American Atheists as a party for lack of standing. This appeal and cross-appeal followed.[5]

Summary judgment shall be granted only if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03[6]. The trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky.1991) (citation omitted). Further, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482 (citations omitted).

On appeal from a granting of summary judgment, our standard of review is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (citations omitted). Because no factual issues are involved and only legal issues are before the court on a motion for summary judgment, we do not defer to the trial court and our review is *de novo*. *Hallahan v. Courier-Journal*, 138 S.W.3d 699, 705 (Ky.App.2004).

The First Amendment of the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion[.]" This portion of the First Amendment, known as the Establishment Clause, was held to apply likewise to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940).

The United States Supreme Court has a long history of applying the Establishment Clause to state legislation, drawing a line with reference to three activities the Establishment Clause seeks to prohibit: "sponsorship, financial support, and active involvement of the sovereign in religious activity." *Lemon v. Kurtzman*, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971) (citation omitted). From these cases have emerged two methods by which the court reviews legislation purported to violate the Establishment Clause. The first method, known as the *Lemon* test, establishes the following criteria to determine whether a law establishes a religion or religious faith: (1) whether the challenged law has a secular purpose; (2) whether the principal or primary effect of the law is to advance or inhibit religion; and (3) whether it creates an excessive entanglement of government with religion. 403 U.S. at 612–13, 91 S.Ct. at 2111. The second method, recognized in *Van Orden v. Perry*, 545 U.S. 677, 686, 125 S.Ct. 2854, 2861, 162 L.Ed.2d 607 (2005), looks to the relevant religious and historical significance, as well as the nature of the entity affected by the legislation. In *Van Orden*, the Court noted that "[s]imply having religious content or promoting a message consistent with a religious doctrine does not

---

5.  Following the filing of the notice of appeal, multiple counsel representing the American Civil Liberties Union, the Family Foundation of Kentucky, Thirty-five Kentucky State Senators, and Ninety-six Kentucky State Representatives, filed motions with this court requesting leave to file *amicus curiae* briefs. Those motions were granted and the *amicus* parties' briefs were filed.

6.  Kentucky Rules of Civil Procedure.

run afoul of the Establishment Clause." *Id.* at 690, 125 S.Ct. at 2863.

In the case at bar, the trial court opined that KRS 39G.010 was enacted for a predominantly religious purpose and conveyed a message of mandatory religious belief, thereby violating the Establishment Clause under the *Lemon* test. Further, the trial court concluded that KRS 39A.285 "places an affirmative duty to rely on Almighty God for the protection of the Commonwealth[,]" and thus "created an official government position on God[,]" which is incompatible with any historical significance possibly found in the legislation.

We find the current case analogous to the United States Court of Appeals Sixth Circuit opinion in *ACLU of Ohio v. Capitol Square Review and Advisory Bd.*, 243 F.3d 289 (6th Cir.2001) (en banc). In *Capitol Square*, the court held that legislation in Ohio making "With God, All Things Are Possible" the official state motto does not violate the Establishment Clause. *Id.* at 309–10.[7] In doing so, the Court emphasized a long history of all three government branches recognizing the role of religion in American life. *Id.* at 293. Such a history includes countless political leaders who thanked God and "prayed that the nation might continue to enjoy His favor." *Id.* at 299. The Court held the motto to be "merely a broadly worded expression of a religious/philosophical sentiment[,]" stating it "involves no coercion. It does not purport to compel belief or acquiescence. It does not command participation in any form of religious exercise. It does not assert a preference for one religious de-

nomination[.]" *Id.* Ultimately, the Court found the motto simply paid "lip service to the puissance of God," rather than seeking to or having the effect of advancing religion within the state. *Id.* at 308.

■ Here, the Kentucky legislature made legislative findings in KRS 39A.285(3), which references the Commonwealth being protected by an "Almighty God" and requires such findings to be publicized in KOHS training materials and posted at the State Emergency Center. While KRS 39G.010(2)(a) requires the executive director of the Kentucky Office of Homeland Security to publicize these findings, no requirement exists that the director agree with or believe in them or that citizens read the posting. Like the Ohio state motto, these laws broadly recognize a belief that the welfare of our Commonwealth, in part, depends on an "Almighty God." The Kentucky legislature has not attempted to compel belief or participation in any form of religious exercise, nor does it seek to prefer one belief over another. A simple reference to a generic "God" acknowledges religion in a general way. *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 42, 124 S.Ct. 2301, 2326, 159 L.Ed.2d 98 (2004).

The Preamble to the fourth and present Constitution of Kentucky, enacted in 1891, provides: "We, the people of the Commonwealth of Kentucky, grateful to Almighty God for the civil, political and religious liberties we enjoy, and invoking the continuance of these blessings, do ordain and establish this Constitution."[8] Given the

---

7. Similar to the instant case, the motto was to be publicly displayed in the Ohio capitol square in Columbus.

8. The preambles to the constitutions of no fewer than 43 other states likewise refer in one way or another to a Supreme Being. (The states in question are Alabama, Alaska,

Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Rhode Island,

historical acceptance of government reference requesting that we "continue to enjoy His favor[,]" a historical review of the application of the Establishment Clause would not prohibit the Kentucky legislation. Such broad declarations have been viewed as "simply a tolerable acknowledgment of beliefs widely held among the people of this country." *Marsh v. Chambers*, 463 U.S. 783, 792, 103 S.Ct. 3330, 3336, 77 L.Ed.2d 1019 (1983).

We disagree with the trial court's assertion that the legislation seeks to place an affirmative duty upon the Commonwealth's citizenry to rely on "Almighty God" for protection of the Commonwealth. The legislation merely pays lip service to a commonly held belief in the puissance of God. The legislation complained of here does not seek to advance religion, nor does it have the effect of advancing religion, but instead seeks to recognize the historical reliance on God for protection. We are also mindful that legislative findings are not conclusive.

Constitutional guaranties would amount to nothing, if there was no way to protect them. The court will not adjudge bad a legislative act on doubtful evidence, but, where it is plain that the Constitution has been violated, it is the duty of the court to say what the law is, and protect private rights. Otherwise the Constitution may be disregarded, and power may be exercised by the Legislature in a case where, under the Constitution, it is without power to act at all, and those whose rights are thus destroyed will be left without remedy.

*Zimmerman v. Brooks*, 118 Ky. 85, 80 S.W. 443, 447 (Ky.1904). Here the legisla-

tive finding neither mandates exclusive reliance on Almighty God nor belief in a particularly deity. Rather, it makes reference to historic instances where American leaders have prayed for Divine protection in trying times. Accordingly, KRS 39A.285 and KRS 39G.010 do not violate the Establishment Clause.

■ Section 5 of the Kentucky Constitution similarly does not mandate the result argued by Appellees. This section provides:

No preference shall ever be given by law to any religious sect, society or denomination; nor to any particular creed, mode of worship or system of ecclesiastical polity; nor shall any person be compelled to attend any place of worship, to contribute to the erection or maintenance of any such place, or to the salary or support of any minister of religion; nor shall any man be compelled to send his child to any school to which he may be conscientiously opposed; and the civil rights, privileges or capacities of no person shall be taken away, or in anywise diminished or enlarged, on account of his belief or disbelief of any religious tenet, dogma or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience.

Appellees cite us to, and we have found, no Kentucky case that has adopted the reasoning that this section prohibits a statutory reference to God of the sort embodied in the statutes in question. In fact, that rationale would place this section at odds with the Constitution's Preamble noted above.[9] Kentucky's four constitutions

South Carolina, South Dakota, Texas, Utah, Washington, West Virginia, Wisconsin, and Wyoming.) Of the six state constitutions that do not contain a preambular reference to God, three—New Hampshire's, Virginia's,

and Vermont's—have establishment clauses that themselves refer explicitly to God or speak approvingly of religion.

9. In addition to the Preamble and Section 5, the Kentucky Constitution includes several re-

have all included a form of the "no preference" clause, and Kentucky's highest court has stated that the purpose of the Section 5 of the present constitution, as well as of its predecessors, is to guarantee religious freedom. *Lawson v. Commonwealth*, 291 Ky. 437, 443–45, 164 S.W.2d 972, 975–76 (1942). When viewed against this historical background, the statutory references to God, like the other constitutional references to God, do not violate the prohibition of Section 5, or impinge on the freedom of the Appellees to believe or disbelieve as they deem fit.

In *Neal v. Fiscal Court of Jefferson County*, 986 S.W.2d 907 (Ky.1999), the Kentucky Supreme Court, citing *Fiscal Court of Jefferson County v. Brady*, 885 S.W.2d 681, 686 (Ky.1994), stated that Sections 5 and 189, which prohibit appropriations to church schools, "mandate a much stricter interpretation than the Federal counterpart found in the First Amendment's 'establishment ... clause.' " 986 S.W.2d at 909–10. The dispute in the case, however, was the constitutionality of the Jefferson County Fiscal Court conferring a benefit in the form of school bus transportation to nonpublic and parochial schools. The Court upheld the benefit.

■ On cross-appeal, American Atheists argues that the trial court erred by finding it to not have standing to bring this action on behalf of its members. We disagree.

■ An association may bring suit on behalf of its members when:

(a) its members would otherwise have standing to sue in their own right; (b)

the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.

*Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *accord Com. ex rel. Brown v. Interactive Media Entm't & Gaming Ass'n, Inc.*, 306 S.W.3d 32, 38 (Ky.2010). In the case at bar, the trial court found that the first two requirements were met, but held that since American Atheists sought damages on behalf of its members, relief required the participation of its individual members.

In its complaint, American Atheists specifically alleged its members suffered physical and emotional damages, which included somatic discomforts, mental pain and anguish, and anxiety. Without the participation of the members who allegedly suffered such damages, a court would have no way to determine the appropriateness of any such award. Accordingly, the trial court's determination that American Atheists did not having standing was not in error.

For the foregoing reasons, the opinion of the Franklin Circuit Court is affirmed in part, and reversed in part and remanded for entry of summary judgment in favor of the Kentucky Office of Homeland Security and Thomas Preston, in his official capacity as the Director of the Kentucky Office of Homeland Security.

WINE, Judge, Concurs.

---

ligious references: Section 1, Bill of Rights, Second, secures "[t]he right of worshipping Almighty God according to the dictates of ... conscience[ ]." Section 170 exempts from taxation property owned by religious institutions. Section 189 prohibits the use of public funds for "church, sectarian or denominational schools." Section 228 mandates that the constitutional oath of office conclude with the words "so help me God." And, finally, Section 232 concerning the manner of administering an oath "shall be such as is most consistent with the conscience of the deponent, and shall be esteemed by the General Assembly the most solemn appeal to God."

SHAKE, Senior Judge, Concurs in Part and Dissents in Part and Files Separate Opinion.

SHAKE, Senior Judge, Concurring and Dissenting:

I concur with the portion of the majority opinion which affirms that portion of the Franklin Circuit Court's judgment which found that American Atheists lacked standing based on its claim for damages by its members. However, I dissent from the remainder of the opinion.

I adopt the sound reasoning of the trial court. The trial court analyzed KRS 39G.010 under the *Lemon* test and the statute was found to have the impermissible effect of endorsing religion because it was enacted for a predominantly religious purpose and conveyed a message of mandatory religious belief. *See Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). KRS 39A.285 was analyzed by the standard articulated in *Van Orden. See Van Orden v. Perry,* 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005). The trial court concluded that unlike an ephemeral, general reference to Almighty God nestled in the middle of a statute, KRS 39A.285 "places an affirmative duty to rely on Almighty God for the protection of the Commonwealth." The court opined that the Kentucky General Assembly had effectively "created an official government position on God" beyond a general acknowledgement that people have historically looked to God for protection.

Respectfully, I disagree with the majority that this case is analogous to the Sixth Circuit case of *ACLU of Ohio v. Capitol Square Review & Advisory Bd.,* 243 F.3d 289 (6th Cir.2001) (en banc). The Ohio state motto, which indicates that all things

are *possible* with God, is strikingly dissimilar to a statute which *mandates reliance* upon God to achieve statewide safety. The prior is a passive aphorism which places a duty upon no one. The latter is a legislative finding, avowed as factual, that the Commonwealth is not safe absent reliance on Almighty God. Furthermore, KRS 39G.010(2)(a) places a duty upon the executive director to publicize that assertion while *stressing* to the public that dependence upon Almighty God is *vital,* or necessary, in assuring the safety of the Commonwealth. This declaration is then given great publicity and emphasized by placement on a plaque prominently displayed at the state's Emergency Operations Center; in the 2010 KOHS Annual Report under the heading "Protection Statement;" within KOHS training materials; and within a KOHS pamphlet that is distributed to the public.[10] In addition, the *Capitol Square* case was decided on federal constitutional principles and this case must as well be analyzed based on Section 5 of the Kentucky Constitution, as discussed below.

I agree with the majority opinion that historical recognition of the role of religion in American life has been permitted by the U.S. Supreme Court. However, KRS 39A.285 and KRS 39G.010 go beyond merely acknowledging the historical role of religion and instead require dependence upon Almighty God to secure the Commonwealth's safety. More troublesome though, is that the statutes are located within a chapter of the Kentucky Revised Statutes which further states "any person violating any provision of this chapter *or any administrative regulation or order promulgated pursuant to this chapter* for which another penalty is not specified shall be guilty of a Class A misdemeanor."

10. See http://homelandsecurity.ky.gov/nr/rdonlyres/064a0665-affa-4ada-8d65-91200e25 cc7b/0/eaeonkybrochure.pdf.

KRS 39A.990 (emphasis added). Therefore, failure to abide by the challenged statutes is a crime punishable by up to twelve months in the county jail.[11] The Court in *Lemon* noted that, although a law "might not establish a state religion," it could "nevertheless be one 'respecting' that end in the sense of being a step that could lead to such establishment and hence offend the First Amendment." *Lemon v. Kurtzman*, 403 U.S. at 612, 91 S.Ct. at 2111.

The Court also expressed that:

Manifesting a purpose to favor one faith over another, *or adherence to religion generally,* clashes with the understanding, reached ... after decades of religious war, that liberty and social stability demand a religious tolerance that respects the religious views of all citizens.... *By showing a purpose to favor religion, the government sends the ... message to ... nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members ....*

*McCreary County, Ky. v. ACLU of Ky.*, 545 U.S. 844, 860, 125 S.Ct. 2722, 2733, 162 L.Ed.2d 729 (2005) (citations omitted) (emphasis added). Indeed, religious freedom means not only the freedom to practice one's religion of choice, but also the freedom to actively remove oneself from the practice of any religion whatsoever. A legislative mandate squarely placing our Commonwealth's security with an Almighty God, and legally requiring such a message to be publicized, is a direct affront to that freedom.

Although the majority opines that the statutes at issue do not "attempt[ ] to compel belief or participation in any form of religious exercise, nor do[ ] [they] seek to prefer one belief over another," they nonetheless unequivocally state a clear preference for "adherence to religion generally." *See McCreary County*, 545 U.S. at 860, 125 S.Ct. at 2733. The statutes are a sweeping declaration that the Commonwealth will not survive absent reliance on Almighty God, that the citizens of the Commonwealth are to be so informed, and that failure to comply with the mandatory provisions may result in prosecution. This is a clear case of religious endorsement and "sponsorship." *See Lemon*, 403 U.S. at 612, 91 S.Ct. at 2111.

Moreover, application of the "reasonable observer" test, as outlined in a more recent opinion of the United States Supreme Court, has been argued as appropriate. *Salazar v. Buono*, —— U.S. ——, 130 S.Ct. 1803, 176 L.Ed.2d 634 (2010) (challenge of a cross placed upon federal land by private persons [members of the Veterans of Foreign Wars] and the statute attempting to transfer that land to the private persons). "That test requires the hypothetical construct of an objective observer who knows all the pertinent facts and circumstances surrounding the symbol and its placement." *Id.* at 1819–20. According to *Amicus Curiae* Ninety-six Kentucky State Representatives, under the reasonable observer test, a well-informed reasonable observer would be aware that the purpose of the challenged statutes before us would be "to acknowledge the admitted fact that our

---

11. *Amicus Curiae* Ninety-six Kentucky State Representatives argues that the statutes are merely resolutions which are not open to constitutional interpretation by this Court. Such an argument is weakened by the legislative requirement to make those "resolutions" public and emphasize their essential nature. Moreover, the very fact that a crime is committed should one not abide by the challenged statutes removes any merit from such an argument.

Republic has always, in times of crisis, sought the protection of a Higher Power." However, by their very words, defenders of the statute acknowledge a purpose of the challenged statutes that is in no way secular. Accordingly, the challenged statutes fail to pass constitutional muster even under the reasonable observer test.

The United States Supreme Court has previously held that a Kentucky statute which required the posting of the Ten Commandments in public schools had a preeminent religious purpose in violation of the Establishment Clause. *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980). The Court found this to be true, even though a provision in the statute required that a footnote be included on the plaque which stated: "[t]he secular application of the Ten Commandments is clearly seen in its adoption as the fundamental legal code of Western Civilization and the Common Law of the United States." *Stone,* 449 U.S. at 41, 101 S.Ct. at 193. The statutes before us offer no such footnote indicating an adoption of "Almighty God" as a historically recognized protector of our nation. If a footnote denoting secular application cannot make it so, then certainly these statutes, completely lacking of such a secular legislative purpose, cannot survive.

Lastly, and perhaps most significantly, Section 5 of the Kentucky Constitution mandates that "[n]o preference shall ever be given by law to any religious sect, society or denomination." Ky. Const. § 5. "No preference" indicates a stricter adherence to the Establishment Clause and would preclude even legislative "acknowledge[ment] [of] religion in a general way," as the majority opinion identifies the statutes in question. The Court in *Neal v. Fiscal Court,* 986 S.W.2d 907, reiterated the opinion of *Fannin v. Williams,* 655 S.W.2d 480 (Ky.1983), which held that

state provisions regarding religious establishment mandate a much stricter interpretation than the Federal counterpart. Although the facts of *Neal* are not an exact duplication of those before us, the sentiment remains. Religious establishment can take many forms. In *Neal* and *Fannin,* it took the form of educational funding; in this case it has taken the form of a state statute. The Constitutional mandate of "no preference" should be applied to all religious inclinations, regardless of the container in which they are delivered. The Kentucky Constitution further mandates that "[n]o human authority shall, in any case whatever, control or interfere with the rights of conscience." Ky. Const. § 5. To declare that the safety of the Commonwealth can only be achieved by its citizens' "reliance upon Almighty God," the legislature has not only interfered with the rights of conscience, it has disregarded them altogether.

For the foregoing reasons, I would affirm the August 26, 2009, order of the Franklin Circuit Court in its entirety.